[Crim. No. 5820.   Second Dist., Div. Two.   Sept. 13, 1957.]

THE PEOPLE, Respondent, v. ERNEST FRANKLIN, Appellant.

Fredric A. Spindell, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted of burglary in violation of Penal Code, section 459.* He appeals from the judgment and sentence. ■ Since an appeal from the sentence is not authorized, the purported appeal therefrom will be dismissed. (Pen. Code, § 1237; *People* v. *Millum,* 42 Cal.2d 524, 525 [267 P.2d 1039].)

Defendant's sole ground for appeal is based on the asserted insufficiency of the evidence to sustain the judgment. In particular he argues that the evidence fails to show "a specific intent to .commit grand or petit larceny or any felony."

On June 12, 1956, Caswell Smith and his wife, Gertrude, lived in a five-room apartment on the second floor of a building located at 906 South Gramercy Drive, Los Angeles. At approximately 1:30 a. m. Mrs. Smith was awakened by a noise that came from the direction of the bedroom door. It sounded like a door opening and closing. She awakened her husband who immediately opened the door. There Mr. Smith saw a Negro standing in the hallway of the apartment. He was about the height of defendant; Mr. Smith was unable to further identify him. Mr. Smith slammed the door and stepped aside; he then heard what sounded like someone running. Mrs. Smith immediately telephoned the police.

---

*The pertinent portion of section 459, Penal Code, reads:
"Every person who enters `any . . . apartment . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

Mr. and Mrs. Smith went to the front door of the apartment which opened into the public hallway of the building. Stacked neatly just outside their front door the Smiths found a pair of shoes and a cap. The back door of the apartment, which had been closed when the Smiths retired, was found to be ajar.

Officer Rieth, of the Los Angeles Police Department, was on duty in the area and arrived at the Smiths' apartment within three or four minutes of the time he received the call. Officer Watson and a partner, who were also in the vicinity, arrived moments later; they drove their patrol car into the driveway of the building. As they rounded the southeast corner of the apartment house Officer Watson observed "the defendant swiftly moving around the corner of the building." Defendant was there taken into custody by Officer Watson and his partner and Officer Rieth who came down the rear stairs. When he was arrested the defendant had no shoes on; Officer Rieth asked him where his shoes were, and he said he didn't know; the officer then asked him 'whether he had left his shoes in the apartment house; defendant at first said "No;" later he said "I guess I did." When the shoes were shown to him at the police station he acknowledged that they were his. Officer Rieth also asked defendant what he was doing in the apartment. Defendant replied that he knew a girl that lived there and had gone there for the purpose of having sexual relations with her. The officer did not detect any alcohol on defendant's breath. Defendant testified that he had been visiting friends on the east side of town where he had consumed a half pint of whiskey; that he had returned by bus to the west side near where he lived; that he was walking from the bus stop toward his home when police officers stopped him, handcuffed him, and placed him in a patrol car. During all this time defendant had his shoes and cap on, but these were taken off by the officers in the patrol car. He denied that he was either in the apartment house at 906 South Gramercy Drive or in the apartment of Mr. and Mrs. Smith.

█ It is necessary for the People to show that a person charged with burglary entered the premises with intent to commit theft or some other felony. Such intent may be inferred from the facts and circumstances disclosed by the evidence. Such intent is rarely susceptible of direct proof and must, therefore, ordinarily be inferred from the circumstances. When the evidence is sufficient to justify a reason-

able inference that such intent existed, the verdict will not be disturbed on appeal. (*People* v. *Franklin*, 106 Cal.App. 2d 528, 530 [235 P.2d 402] ; *People* v. *Smith*, 84 Cal.App.2d 509, 512 [190 P.2d 941].) ▮ It was, of course, for the trial court to pass upon the credibility of witnesses and to determine the reasonable inferences to be drawn from the evidence. ▮ And when a judgment is attacked upon the ground that the evidence is insufficient to support it, we must view the evidence and the reasonable inferences therefrom in the light most favorable to the party prevailing in the trial court. (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Kristy*, 111 Cal.App.2d 695, 698 [245 P.2d 547].)

▮ Applying these principles to the facts of the present case, it is clear that there is ample evidence from which a reasonable inference may be drawn that defendant intended to commit theft in the Smith apartment. He was arrested at an unseemly hour in the morning while proceeding swiftly and cautiously, without shoes, around the corner of the apartment building. His shoes had been found, together with his cap, at the entrance of the apartment. Defendant later admitted that these articles belonged to him. These circumstances point unerringly to the defendant as the person making the noise opening the door to the Smith apartment that awakened Mrs. Smith, and as the person standing immediately outside the door when Mr. Smith opened it. From these circumstances the trial court could reasonably draw the inference that defendant intended to burglarize the Smith apartment.

The purported appeal from the sentence is dismissed. The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.