[Crim. No. 7136.   Second Dist., Div. Two.   Feb. 16, 1961.]

THE PEOPLE, Respondent, v. DAVID R. ALISON,
Appellant.

Al Matthews for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOX, P.. J.—Defendant was convicted of violating the Corporate Securities Law (Corp. Code, § 26104, subd. (a)), in that on or about September 26, 1958, in Los Angeles County, defendant did, willfully, unlawfully and knowingly, sell and offer for sale, and negotiate for sale for value, shares of capital stock without first applying for and receiving from the Corporation Commissioner a permit so to do. Proceedings were suspended and three years' probation was granted on condition, *inter alia*, that defendant pay a fine of $750. He has appealed from the judgment (order granting probation, Pen. Code, § 1237, subd. 1).*

The complaining witness, Orion Sutton, of Loveland, Colorado, was introduced to defendant on September 24, 1958, at defendant's apartment in South Pasadena, by Kenneth Brown, who had told him something about United Resources, Inc., in which defendant was interested. Sutton went to see defendant about purchasing a franchise for a plant to be established in his home town of Loveland. Defendant advised Sutton that such a franchise was premature and too expensive.

Defendant then started "to put together a deal" for Sutton to purchase stock. He told Sutton about United Resources, Inc.; that its product was going to be Bartolith building material; that it was a sound Nevada corporation with great potential, and was based on good business principles. Defendant also told Sutton that he was the promoter of this corporation, and that the purchase of this stock was an exceptional deal and a "ground floor setup." The stock was represented by defendant as having a value of $6.25 per share. Defendant "put a deal together" to sell Sutton 9,600 shares of this stock at $6.25 a share, totaling $60,000. Defendant also told Sutton that if he purchased these shares he could

---

*In his notice of appeal, defendant states that he also appeals from "the denial of the motion for a new trial." Neither the clerk's transcript nor the reporter's transcript reveal that defendant made any motion for a new trial.

get a bonus of a million shares "for $10.00 and other valuable consideration." (Just what the "other valuable consideration" was to be was not explained.) Sutton informed defendant that he would have to return to Colorado to confer with his wife before any definite decisions could be made.

The next morning defendant had breakfast with Sutton at the latter's hotel in Pasadena, at which time they went over a rough sketch of the proposition for the purchase of these shares, which defendant wrote out in longhand. Defendant also stated "that there was a maneuver in it for stock that was issued and outstanding prior to 1931, where a buyer could be issued some of that stock and I could get my money back from the sale of that stock," which was to be sold "through the Exchange in New York"; that "it was salable stock."

The result of this conference was that defendant was to go back to his apartment, draw up a formal agreement, the board of directors was to be called in to sign the agreement, and Sutton would take it and go back to Colorado and attempt to raise the money for the stock.

A stock option, dated September 26, 1958, was given to Sutton by defendant at the latter's apartment on that date; it bore the apparent signatures of James Breen, as president of the corporation; Ralph Nunnelly and Robert Watt, as vice-president and secretary-treasurer, respectively; and the seal of United Resources, Inc. At the same time, defendant delivered to Sutton two additional stock options addressed to him and his wife; one of these bore the signature of Nunnelly, the other that of Breen. These options were typed at defendant's apartment and were signed in his presence. Sutton took these options to Colorado to discuss them with his wife. He later called defendant to tell him that he was having difficulty in raising the money. Defendant told him to go ahead and try to raise the money, and get it to him as soon as possible.

Sutton called defendant again to tell him that he was having difficulty in raising the cash, and suggested a down payment to hold one of the $10,000 options open. As a result of this conversation, Sutton wired defendant $2,000. Defendant approved this procedure on condition that Sutton get the rest of the $10,000 in order to exercise one option in its entirety. Shortly thereafter Sutton called defendant to tell him that he had an additional $5,000 for the corporation.

Defendant then arranged a meeting in Reno for the delivery of this money. On October 23d defendant, Watt, Nunnelly and Sutton met in Reno. Upon that occasion Sutton handed two checks (one for $2,000 and another for $3,000) to Watt. The reason for the two checks was that defendant and his associates wanted to get this amount of cash out of the transaction immediately, and the Reno bank was willing to and did cash the smaller check. In addition, Sutton handed Watt a check for $3,000, which, however, was postdated November 22, 1958. The board of directors ordered the issuance of the stock upon the delivery of these checks by Sutton.

It was stipulated that neither United Resources nor defendant applied to the Corporation Commissioner for a permit to issue or sell stock in California.

In seeking a reversal defendant's basic contention is that the evidence is insufficient to support a finding of a violation of the Corporate Securities Law in that only preliminary discussions or negotiations took place in California, and that these do not violate the Corporate Securities Law.

Corporation Code, section 26104, provides in part:

"Every officer, agent, or employee of any company and *every other person,* who does any of the following acts is guilty of a public offense . . .

"(a) Knowingly authorizes, directs, or aids in the issue or sale of, or issues or executes, or sells, or causes or assists in causing to be issued, executed, or sold, any security, in nonconformity with a permit of the commissioner then in effect authorizing such issue . . . ." (Emphasis added.)

In *People* v. *Sears,* 138 Cal.App.2d 773, 791 [292 P.2d 663], the court stated: "Section 25009 of the Corporations Code provides that 'sale' or 'sell' includes every disposition, or attempt to dispose, of a security or an interest in a security for value. 'Sale' or 'Sell' is defined to include the following (whether done directly or by an agent or otherwise) : 'An offer to sell; an attempt to sell; a solicitation of a sale; an option of sale; a contract of sale; . . .' " In *People* v. *Mills,* 162 Cal. App.2d 840, 849 [328 P.2d 1049], this court pointed out that "Under the California statute an offer or attempt to sell comes within the definition of sale (Corp. Code, § 25009), and a sale made without an appropriate permit constitutes a crime. . . . [Citations.]"

In *B. C. Turf & Country Club* v. *Daugherty,* 94 Cal. App.2d 320 [210 P.2d 760], the court stated (p. 329) : "From

a standpoint of interpretation, there can be no reasonable doubt but that these provisions of the statute require a foreign corporation to secure a permit to solicit a sale of its stock in this state, or to engage in preliminary negotiations looking towards such sale, even though the issuance of the securities and the transfer of their title will, in good faith, be completed in a foreign state.'' Though it is settled that a foreign corporation must receive a permit in order to solicit the sale of stock in California, ''There still remains the question as to what type of solicitation and what type of preliminary negotiations fall within the intent of the statute.'' (*B. C. Turf & Country Club* v. *Daugherty, supra.*)

Before a judgment of conviction may be reversed on the ground of insufficiency of the evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Frankfort,* 114 Cal. App.2d 680, 689 [251 P.2d 401].) We must assume, in support of the judgment, the existence of every fact which the trial court could have reasonably deduced from the evidence and then determine whether the facts ''justify the inference of guilt.'' (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259].) Also, ''a finding that the transaction in question was within the proscription of the statute will not be disturbed if there was substantial evidence to support it.'' (*People* v. *Rankin,* 169 Cal.App.2d 150, 160 [337 P.2d 182].)

Applying these principles to the factual picture herein delineated, it is clear there is ample evidence to support the conviction. As a result of the meetings that defendant had with Sutton in this county, he devised plans and prepared options for Sutton to buy stock in United Resources, Inc., and arranged that Sutton could also purchase bonus stock provided he exercised the basic options. These acts on the part of defendant reasonably justify an inference that defendant offered or attempted to sell securities in this state without a permit therefor. This constituted a violation of the Corporate Securities Law. The fact that the options were given in California, with the transfer of title to the stock taking place in Nevada pursuant to arrangements made by defendant for a meeting in Nevada for the transfer of the money, is immaterial. The offer or attempt to sell took place in this state. The offense for which defendant was convicted

therefore took place here. The case is clearly governed by the principles stated in *People* v. *Sears, supra,* on which the trial judge relied.

Defendant places his sole reliance on *B. C. Turf & Country Club* v. *Daugherty, supra.* Examination of that case discloses that the transaction in the instant case in California took on much more specific form and substance than did the "exchange of views" and "general discussion of a plan of organization" (p. 331) in the Turf Club case.

The judgment is affirmed.

Ashburn, J., and McMurray, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.