[Crim. No. 16471. Second Dist., Div. Two. Dec. 17, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES GENE MACK, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Allen A. Haim, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, J.**—Appellant, Charles Gene Mack, was charged by information with the commission of four felonies. As he was found not guilty of counts I and II, we are only concerned with the remaining counts III and IV which charged appellant with violations of Penal Code section 487, subdivision 1 (grand theft) and Penal Code section 459 (burglary) respectively. Appellant personally and by counsel waived trial by jury and pursuant to stipulation the cause was submitted upon the testimony contained in the transcript of the preliminary hearing and the exhibits received at said hearing with appellant reserving the right to offer additional evidence. The court found the appellant guilty of the grand theft and burglary charges and fixed the latter conviction as in the second degree. Motion for new trial was denied as was appellant's application for probation. Appellant was committed to the Youth Authority for the terms prescribed by law as to each count, said terms to run concurrently. This appeal is from the judgment and from the order denying motion for new trial.[1]

### STATEMENT OF FACTS

■ By reason of appellant's challenge to the sufficiency of the

---

[1]The order denying the motion for a new trial is not separately appealable and the purported appeal from that order must be dismissed. (Pen. Code, § 1237.)

evidence to support the convictions, it is necessary to set forth in some detail the evidence adduced at the trial.

On August 25, 1968, James McPhatter was the owner and operator of a trucking business located on south Main Street in the City of Los Angeles. He locked all doors and windows of his establishment before leaving the same. Sometime between the hours of 10 p.m. that day and 4 a.m. the following morning his place of business was broken into and a battery charger was removed therefrom. Several hydraulic motors which had been bolted to trucks parked in an uncovered area also had been removed. McPhatter testified that two of the motors were each worth about $250 and a third was worth about $150. He had not given appellant or anyone else permission to enter his premises and remove any of his property therefrom.

On August 26, 1968, at about 4 a.m., Fred H. Early and Jack Reidy, members of the Los Angeles Police Department, were driving in the vicinity of 97th and Main Streets. Early observed a 1957 Chevrolet driven by appellant pull out from the curb without lights and make a right turn. As Early reached the intersection he heard a burglar alarm ringing in the service station directly across the street from the location where he had first seen the car. Early proceeded to follow and stop the vehicle and upon approaching the same he looked in and saw a battery charger on the rear seat. Early told his partner, Reidy, to stand by while he went across to the service station. There he observed that the south windows had been pried open and that the interior of the station was in disarray.

Upon returning to the Chevrolet, Early asked the occupants thereof for identification and as appellant stepped from his car the officer saw a 14-inch screwdriver with a one-half inch blade stuck between the seat cushion and the door beside the driver. As Early had noticed that the pry marks on the windows were approximately one-half inch in width and as there was black paint on both the screwdriver and on the windows, the officer placed appellant and his passenger, Alfred Cowans, under arrest. A search of the vehicle revealed two hydraulic motors and a Bendix motor in the trunk compartment—all of which were the property of McPhatter.

Appellant was searched when he was booked and two washers and a nut, green in color, were found in a pants pocket. The color matched the paint on one of the hydraulic units.

A criminalist employed by the Los Angeles Police Department testified that he had made comparisons of the pry mark on the service station window with the screwdriver blade. He testified that the screwdriver precisely fit the pry mark.

Appellant's wife, Delores Mack, testified that she and her husband had

been at an eating establishment called "Jack-In-The-Box" from 11:30 p.m. on the day preceding appellant's arrest until 4 a.m. on the day of his arrest. They had had nothing to eat as she did not like the food served there. Appellant then drove Delores to her mother's home and immediately left to secure some food for his wife at an all night eating establishment called Chicken Fry. Delores further testified that Cowans was not in the car with her husband and that the appellant was due at work at 8 a.m. that day.

Cowans, who was appellant's cousin, had been processed as a minor prior to the date of appellant's trial. He testified that he alone had burglarized the service station and that as he was pushing the battery charger down the street he happened to see his cousin drive by and flagged him down. The battery charger was placed on the back seat. He denied that he had placed anything in the trunk compartment. Cowans first testified that he had taken hydraulic lifts but on cross-examination testified that he had taken lift fluid tanks and not lifts and that he had thrown the tanks in a trash can when the police arrived.

Appellant testified in his own behalf, denied involvement in the thefts or burglary and accounted for the presence of the nut and washer found on his person as having been removed from a hydraulic lift which he owned. He did not recall whether his cousin had placed any objects in the trunk compartment.

He also testified that he was on his way to buy some food for his wife at Norms Restaurant when he happened to see his cousin and offered to drive him home. He did not know whether his car lights were on or not at the time the officers stopped him.

### APPELLANT'S CONTENTIONS

1. That the evidence was insufficient to support the convictions; and

2. That his commitment to the Youth Authority on both the grand theft and the burglary convictions constituted double punishment as proscribed in Penal Code section 654.

### FIRST CONTENTION

Appellant asks this court to consider whether the evidence was sufficient to support the judgment. He does not, however, argue this issue. A review of evidence indicates not only that there was substantial evidence to support the findings of guilt by the trial court but there was overwhelming evidence of appellant's participation in the thefts and burglary. The defense offered by appellant was so palpably incredible that no further comments thereon are required.

The limitations of appellate review are so well known that they need not be here restated at length.

■ "Before a judgment of conviction may be reversed on the ground of insufficiency of the evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Alison,* 189 Cal.App.2d 201, 205 [10 Cal.Rptr. 859].) (See also *People* v. *Daugherty,* 40 Cal.2d 876 [256 P.2d 911]; *People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

■ It is well settled that: " 'The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. . . .' " (*People* v. *Hillery,* 62 Cal.2d 692, 702 [44 Cal.Rptr. 30, 401 P.2d 382].)

■ Finally, the credibility of the witnesses who testified is a matter for determination by the trier of fact. "It is the trial judge's province to determine the credibility of the witnesses and the weight to which their testimony is entitled." (*People* v. *Young,* 197 Cal.App.2d 129, 133 [17 Cal.Rptr. 283].) (See also *People* v. *Franklin,* 153 Cal.App.2d 795 [314 P.2d 983].) The findings of guilt were amply supported by the evidence.

## SECOND ISSUE

Appellant contends that his commitment to the Youth Authority on both the grand theft and the burglary convictions constituted double punishment. For reasons hereinafter stated it is unnecessary for this court to make a determination as to whether the thefts from the trucks parked *outside* the service station and the burglary *within* the structure itself constituted a single course of conduct comprising an indivisible transaction punishable under more than one statute. If such were the case, punishment for both of the two offenses would be proscribed by Penal Code section 654.

■ Penal Code section 15[2] establishes the forms of punishment for convictions of public offenses. Although this code section was adopted in 1872, it has never been amended to include commitment to the Youth Authority as punishment for a conviction. ■ "The purpose of this chapter [the Youth Authority] is to protect society more effectively *by substituting for retributive punishment* methods of training and treatment

---

[2]Penal Code section 15 provides as follows: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: 1. Death; 2. Imprisonment; 3. Fine; 4. Removal from office; or, 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this State."

directed toward the correction and rehabilitation of young persons found guilty of public offenses." (Welf. & Inst. Code, § 1700.) (Italics added.)

"The act is replete with provisions of rehabilitation, such as those relating to work to be done by persons committed (§ 1760.6), forestry camps (§ 1760.4), and various modes of correction and treatment (1768)." (*People* v. *Zaccaria,* 216 Cal.App.2d 787, 791 [31 Cal.Rptr. 383].) Further, the act requires that the Authority ". . . keep under continued study a person in its control . . ." and that the "Authority . . . discharge such person as soon as in its opinion there is reasonable probability that he can be given full liberty without danger to the public." (Welf. & Inst. Code, § 1765.) Such provisions clearly indicate that the purpose of commitment to the Youth Authority is not punishment but rehabilitation.

Mention should be made of two additional sections of the act. Section 1737.1 of the Welfare and Institutions Code in part provides that the Authority may return to the committing court an "improper person" or a person who is "so incorrigible or so incapable of reformation . . . as to render his retention detrimental to the interests of the Authority and the other persons committed thereto, . . ." Under such circumstances the court may then sentence the individual and impose ". . . *punishment of the offense* of which he was convicted." (Italics added.) ▮ If the appellant at any time in the future is returned to the committing court for reasons specified in the said section and the court imposes punishment on both the theft and the burglary convictions, he may then raise the multiple punishment issue if such is applicable under the facts of the cause before this court.

Finally, section 1772 of the Welfare and Institutions Code succinctly incorporates the purpose of the act. It provides in part that "every person honorably discharged from control by the Authority who has not, . . . been placed by the Authority in a state prison shall thereafter be released from all penalties and disabilities resulting from the offense or crime for which he was committed, . . . and the court may upon . . . petition set aside the verdict of guilty and dismiss the accusation or information . . ." ▮ We, therefore, hold that a commitment to the Youth Authority on each of two felonies does not constitute double punishment as proscribed in Penal Code section 654.

The purported appeal from the order denying the motion for a new trial is dismissed.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.