[Crim. No. 10239.   In Bank.   Dec. 16, 1966.]

In re JAMES WIMBS on Habeas Corpus.

James Wimbs, in pro. per., and Robert N. Beechinor, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, and Derald E. Granberg, Deputy Attorney General, for Respondent.

TRAYNOR, C. J.—Petitioner is serving sentences based on his pleas of guilty to three charges of feloniously issuing checks without sufficient funds. (Pen. Code, § 476a.) He fraudulently issued nine checks for amounts totalling more than $100 in San Joaquin County in 1964 and two checks, each for more than $100, in Stanislaus County in 1965. In January 1966 he was arrested in Los Angeles County and confessed to the offenses. In February 1966 he pleaded guilty to the 1964 offense in the San Joaquin County Superior Court, and that court suspended imposition of sentence and granted him probation. In March 1966, on petitioner's plea of guilty to the 1965 offenses, the Stanislaus County Superior Court imposed concurrent sentences to the state prison. On May 23, while petitioner was in the state prison under the Stanislaus County sentences, the San Joaquin County Superior Court revoked probation and sentenced petitioner to the state prison for the 1964 offense.

Petitioner seeks a writ of habeas corpus on the grounds that his guilty pleas were induced by misrepresentations, threats, and promises precluding his exercise of free will and judgment, and that the San Joaquin County Superior Court imposed sentence in his absence and in violation of his right to appear and defend in person and with counsel.

Habeas corpus proceedings have been invoked to explore contentions, similar to those of petitioner here, that a guilty

plea was vitiated by the continuing coercive effect of an illegally obtained extrajudicial confession (*In re Poe* (1966) *ante,* p. 25 [51 Cal.Rptr. 896, 415 P.2d 784]; *In re Seiterle* (1964) 61 Cal.2d 651, 657 [39 Cal.Rptr. 716]), by misrepresentation and inadequacy of the public defender (*In re Poe, supra, ante,* at pp. 32-35; *In re Beaty* (1966) 64 Cal.2d 760, 764 [51 Cal.Rptr. 521, 414 P.2d 817]; *In re Atchley* (1957) 48 Cal.2d 408, 412-413 [310 P.2d 15]; *In re Hough* (1944) 24 Cal.2d 522 [150 P.2d 448]), and by threats and promises as to punishment made by defense counsel and reiterated or corroborated by the prosecuting attorney or the court (*In re Atchley, supra,* 48 Cal.2d at pp. 410, 414; *In re Hough, supra,* 24 Cal.2d at p. 527).

In petitioner's account of events leading to his pleas and sentences he charges the San Joaquin County public defender, district attorney, and judge of the superior court with misrepresenting that confessions obtained from him in violation of *People* v. *Dorado* (1965) 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361], were proper evidence against petitioner, and with threatening consecutive prison sentences if petitioner did not plead guilty and promising probation if he did. He charges similar misrepresentations, threats, and promises by the Stanislaus County public defender and district attorney. █ Petitioner's version of events, summarized in the margin,[1] does not take into account the facts

---

[1]Petitioner asserts that the following events led him to become "the deluded instrument of his own conviction": He was arrested in Glendale on January 28, 1966, pursuant to a warrant issued in Downey on a forgery complaint. When he asked to telephone for bail and an attorney, the arresting officer slapped him and told him the Downey police would let him telephone after he had made a statement. Neither the Glendale police nor the other law enforcement officers through whose hands petitioner later passed informed him of his rights to counsel and to remain silent under *People* v. *Dorado* (1965) 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361]. Because petitioner had been slapped when he first asked to telephone an attorney, petitioner did not renew that request. The Glendale police interrogated him for four hours, then turned him over to the Downey police, who held him incommunicado for two days, questioned him, and obtained his confession to the subject crimes. The Downey charge was dropped on January 31 and on February 4 the Downey police turned petitioner and his confession over to the Stockton police. The Stockton officers took petitioner to San Joaquin County, held him incommunicado for three days, "confronted" him with his earlier tape-recorded confession made in Downey, interrogated him, and obtained another confession to the subject crimes.

On February 26, 1966, petitioner appeared in the San Joaquin County Superior Court. There the public defender, the district attorney, and the judge told him that his confessions were evidence that could be used against him, threatened him with consecutive prison sentences if he did not plead guilty, and promised that if he pleaded guilty he would receive

of record in the proceedings against him. The court records not only show that the proceedings were regular on their face but also refute the bases of petitioner's factual conclusion that his pleas were the product of official misrepresentations, threats, and promises.

Thus, petitioner asserts that on February 26 he appeared in the San Joaquin County Superior Court and pleaded guilty to six counts of violating section 476a after court and counsel had "confronted" him with his illegally obtained confessions and made the claimed threats and promises. Petitioner's assertions are confuted by the record showing that on February 14 the district attorney filed the information charging one count of violating section 476a by issuance of nine checks totalling $102.72 and on the same day petitioner personally stated, in response to questioning by the court, that he was familiar with the allegations of the information and entered his guilty plea. The record further shows that on February 28, when petitioner was granted probation, the court and the public defender were not aware that

probation. Petitioner incorrectly states that on February 26 he pleaded guilty to six counts of issuing checks without sufficient funds. Thereafter the San Joaquin County Superior Court granted probation on condition that petitioner make restitution.

On March 2, 1966, petitioner and his confessions were turned over to law enforcement officers of Stanislaus County. They took him to Modesto and repeated the process of holding him incommunicado for three days, "confronting" him with his previous confessions, questioning him in violation of *Dorado,* and obtaining another confession. The public defender and district attorney of Stanislaus County then induced petitioner to plead guilty by misrepresenting that the confessions could be used in evidence against him and by threats and false promises as to punishment. The Stanislaus County Superior Court considered granting probation but did not do so because petitioner was unable to make restitution.

On March 28, immediately after the Stanislaus County Superior Court sentenced petitioner to concurrent terms in the state prison for his 1965 offenses, petitioner sent a letter from the Modesto jail to the superior court judge before whom he had appeared in San Joaquin County, with a copy to the San Joaquin County district attorney, stating, "You lied to me. They didn't give me probation like you promised. . . . They told me if I made restitution they would grant probation but I ain't got no money and they said I had to go to prison.

"Are you going to continue me on probation? If you aren't then I want to come to court because you people have done me wrong and I want a lawyer."

On April 29, 1966, the San Joaquin County public defender wrote to petitioner in the state prison advising that he was no longer eligible for probation because of the prison sentence imposed in Stanislaus County and requesting that petitioner allow the public defender to appear in petitioner's absence for pronouncement of sentence in San Joaquin County. Thereafter, petitioner asserts, the San Joaquin County Superior Court sentenced him in his absence in violation of his right "to appear and defend, in person and with counsel." (Cal. Const., art. I, § 13.)

petitioner was liable to be taken to Stanislaus County for prosecution there.[2] Manifestly then petitioner is mistaken in his assertion that his guilty plea was induced by statements of the San Joaquin County Superior Court that led him to believe he would receive probation in Stanislaus County.

Petitioner avers that on March 2 Stanislaus County authorities took him from San Joaquin County to Modesto and then held him incommunicado for three days while unlawfully eliciting another confession. This averment is disproved by the record of the municipal court in Modesto showing that petitioner was arraigned there on the Stanislaus County complaint on March 3 at 9:30 a.m.

At the proceedings in Stanislaus County,[3] both in the

[2]The probation report considered by the San Joaquin County Superior Court on February 28 does not mention the charges in Stanislaus County. It states that petitioner had admitted to the probation officer the truth of the facts charged in the San Joaquin County information and recommends the granting of probation because of petitioner's ''minimal prior criminal record'' (a minor traffic violation in California and a minor game law violation in Oregon), his expressed remorse, and the fact that apparently he would benefit from the supervision available on probation. The judge commented that ''defendant has a good record'' and the public defender replied that he did and joined in the recommendation that he be granted probation.

The terms of probation make it obvious that the court contemplated that petitioner, who was then without funds, would be released on probation so that he could obtain employment and make restitution as ordered, not that he would be turned over to authorities of another county for further prosecution. The probation order concluded, ''The defendant will be released after he has signed a copy of the terms of probation.''

On March 1 petitioner signed a certificate that he had received and familiarized himself with a copy of the probation order. On March 2 the probation officer filed a supplemental report stating that he had inadvertently failed to state in his previous report that while petitioner was in jail awaiting disposition of the San Joaquin County charge, warrants were filed against him on charges of two violations of section 476a in Stanislaus County and charges of violations of the same section in Tehama County and Sacramento County. Petitioner was then turned over to the Stanislaus County authorities.

On May 23 when the San Joaquin County Superior Court revoked probation and imposed sentence the judge stated that he had not known of the pending charges in other counties at the time probation was granted and had first learned of them on March 2.

[3]On March 3, 1966, petitioner appeared in the municipal court in Modesto, was informed of the complaint charging two violations of section 476a in Stanislaus County, and was advised of his rights. The proceeding continued as follows:

''THE COURT: . . . Do you want to be represented by a lawyer?

''DEFENDANT: Your Honor, under interrogation I did admit to the checks.

''THE COURT: Do you want to have a lawyer or not?

''DEFENDANT: Well, do you have my record there from Stockton?

''THE COURT: No, sir.

''DEFENDANT: Well, I was placed on probation.

''THE COURT: Just a moment. I don't know anything at all about that.

municipal court and in the superior court, petitioner volunteered information as to his offenses in other counties. He told the superior court, ''When I surrendered I told the whole

All I know is that there will be a preliminary examination on this case, unless you are represented by counsel and enter a plea of guilty or you waive the preliminary examination. . . . [Y]ou cannot do either of those without being represented by a lawyer. . . .

''DEFENDANT: Well, then I would like to have an attorney. . . .

''THE COURT: All right; the public defender is appointed.''

On the afternoon of March 3 petitioner appeared in municipal court with the public defender, pleaded guilty, and the matter was certified to the superior court.

On March 10 petitioner appeared in the superior court. The court reviewed the proceedings had in the municipal court and asked, ''You pleaded guilty to these two counts because you are guilty of those two offenses?'' Petitioner answered, ''Yes.'' The court stated, ''Defendant stands convicted of a violation of Section 476a . . . in two counts, both felonies,'' advised petitioner of his right to counsel, and asked, ''you want an attorney?

''THE DEFENDANT: May I ask, is it possible that I can save the County money, because I have pleaded guilty, and I have received probation in another county for the same thing. . . .

''THE COURT: What county?

''THE DEFENDANT: San Joaquin.

''THE COURT: And when did you receive probation there? . . .

''THE DEFENDANT: 28th of February.

''THE COURT: 1966?

''THE DEFENDANT: Yes.

''THE COURT: Now these checks, according to the complaint, were written by you [in Stanislaus County] on the 28th of December, 1965.

''THE DEFENDANT: Yes.

''THE COURT: . . . I will want this matter referred to the Probation Officer. Have you ever been in State Prison?

''THE DEFENDANT: No, I haven't. I also have two holds on me, one in Sacramento and one in Tehama.

''THE COURT: Are these checks also?

''THE DEFENDANT: Yes. When I surrendered I told the whole thing, because I do want to make restitution.

''THE COURT: I will come back to it. . . . If you want the Public Defender I will appoint him to represent you. If you don't, then of course I won't make the appointment.

''THE DEFENDANT: Yes, I would, Your Honor.

''THE COURT: You will be appointed then, Mr. Stone, as the Public Defender to represent the Defendant at all stages of the proceedings. I assume that you want this matter referred to the Probation Officer for investigation and report.

''MR. STONE: Yes, Your Honor.

The court fixed March 29 as the time for hearing on probation and sentence. On that day petitioner appeared with Mr. Stone. The court stated, ''[T]he Probation Officer recommends against probation in this matter, by reason of the fact that the Defendant has outstanding checks in numerous counties and as a matter of fact in Oregon. . . .

''MR. STONE: I have discussed the matter with the Defendant. He advises me that the information set forth in the report is factually correct [except for a few minor matters that were then corrected in open court]. . . .

''THE COURT: Mr. Wimbs, you've gotten yourself in a very difficult position here. As a matter of fact you have restitution to make in the

thing, because I do want to make restitution.'' Thereafter, at the probation and sentence hearing, the court stated, ''[Y]ou have restitution to make in the event of probation that you will never be able to make. That's about the answer,'' and petitioner said, ''That's about the answer.'' Sentence was imposed and petitioner, having assumed in the Stanislaus County Superior Court an attitude of frank disclosure, then wrote to the San Joaquin County Superior Court the letter quoted in footnote 1, stating, ''You lied to me. They didn't give me probation like you promised.'' In the light of the objective facts of record and of petitioner's misstatements as to those facts, we do not believe that his averments that his guilty pleas were involuntary raise a triable issue of fact.

█ Habeas corpus is available also to attack a judgment pronounced in violation of a defendant's rights ''to appear and defend, in person and with counsel'' (Cal.Const., art. I, § 13). (*In re Perez* (1966) *ante,* pp. 224, 230 [53 Cal. Rptr. 414, 418 P.2d 6].) Petitioner contends that the San Joaquin County Superior Court's imposition of sentence on May 23, 1966, while petitioner was confined in the state prison, violated those rights. The Legislature, however, has provided a procedure for pronouncement of judgment in the absence of a defendant to whom the court has granted probation without imposition of sentence, who is thereafter imprisoned under a commitment for another crime, and who executes a written request, attested by a prison official, stating that the defendant ''wishes the court to impose sentence in the case in which he was released on probation, in his absence

---

event of probation that you will never be able to make. That's about the answer.

''THE DEFENDANT: That's about the answer. . . .

''THE COURT: . . . I will follow the recommendation of the Probation Officer. Probation is denied. Is there any statement you wish to make . . .?

''MR. STONE: No, Your Honor. We will waive formal arraignment for judgment, and there is no legal cause to show why the judgment and sentence of the Court should not now be pronounced.

''THE COURT: . . . Is there any statement that you wish to make, Mr. Wimbs?

''THE DEFENDANT: Does this here [the possibility of charges from other jurisdictions being pressed after delivery to the state prison] . . . include out of State also?

''THE COURT: That I don't know. . . . I suggest after you get to Vacaville you might talk to some of the authorities up there and make a determination there what course you are to assume.''

After pronouncing judgment of conviction on the two counts the court stated, ''Now you are going to have a lot of other things to face before you are through. I am going to order these two counts to run concurrently.''

and without his being represented by counsel." (Pen. Code, § 1203.2a.)[4] The San Joaquin County sentence of May 23 was imposed in compliance with section 1203.2a.[5]

[4]Section 1203.2a, as amended in 1963, provides in this regard: "If any defendant who has been released on probation is committed to a prison in this State for another offense, the court which released him on probation shall have jurisdiction to impose sentence, if no sentence has previously been imposed for the offense for which he was granted probation, in the absence of the defendant, on the request of the defendant made through his counsel, or by himself in writing, if such writing is signed in the presence of the warden or superintendent of the prison in which he is confined or the duly authorized representative of the warden or superintendent, and such warden or superintendent or his representative attests both that the defendant has made and signed such request and that he states that he wishes the court to impose sentence in the case in which he was released on probation, in his absence and without his being represented by counsel.

"The probation officer may, upon learning of such defendant's imprisonment, and must within 30 days after being notified in writing by the defendant or his counsel, or the warden or superintendent . . . , report such commitment to the court which released him on probation.

". . . If sentence has not been previously imposed and if the defendant has requested the court through counsel or in writing in the manner herein provided to impose sentence in the case in which he was released on probation in his absence and without the presence of counsel to represent him, the court shall impose sentence and issue its commitment, or shall make other final order terminating its jurisdiction over the defendant in the case in which the order of probation was made. . . . If the case is one in which sentence has not previously been imposed, the court is deprived of jurisdiction over defendant if it does not impose sentence and issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 30 days after defendant has, in the manner prescribed by this section, requested imposition of sentence.

". . . In the event the probation officer fails to report such commitment to the court or the court fails to impose sentence as herein provided, the court shall be deprived thereafter of all jurisdiction it may have retained in the granting of probation in said case."

[5]As stated above, immediately after the Stanislaus County Superior Court sentenced petitioner to the state prison he wrote to the San Joaquin County Superior Court, "Are you going to continue me on probation? If you aren't then I want to come to court because you people have done me wrong and I want a lawyer."

After petitioner was delivered to the state prison the San Joaquin County Public Defender wrote to him on April 29, 1966, stating that "Since you are not now eligible for probation and your matter will be brought before the Court here, it is requested that you allow this office to appear without your presence for the purpose of having sentence pronounced in this County. We are in hopes that upon the termination of probation, the Court will sentence you to the State Prison to run concurrently with the sentence you are now serving."

On May 5, 1966, petitioner signed and the prison records officer attested a request, directed to the San Joaquin County probation officer, stating, "In accordance with Section 1203.2a of the Penal Code, I am requesting that you advise the Superior Court of your county with respect to my present commitment and that you request said court to effect disposition of my probation in your county as required by the Penal Code Section

■ When the San Joaquin County Superior Court imposed sentence on May 23, it ordered that its sentence run consecutively with any other sentence petitioner might be serving. Thereafter on July 13, 1966, that court directed entry of a ''corrected'' judgment ordering that its sentence run concurrently. The court was without power to thus ''correct'' its sentence as pronounced and formally entered in the minutes. (*In re Pedrini* (1949) 33 Cal.2d 876, 879 [206 P.2d 699]; *People* v. *Behrmann* (1949) 34 Cal.2d 459, 462 [211 P.2d 575]; *People* v. *Thomas* (1959) 52 Cal.2d 521 [342 P.2d 889].) As the Attorney General points out, the purported ''correction'' was not of merely clerical error or inadvertence but an attempt, in excess of the court's power, to revise its deliberately exercised judicial discretion.[6] (See also *In re Sandel* (1966) 64 Cal.2d 412 [50 Cal.Rptr. 462, 412 P.2d 806].)

Petitioner, however, contends that the San Joaquin County Superior Court was without power to make its initial order of May 23, 1966, that its sentence should run consecutively. This argument, presented in propria persona, rests on petitioner's misunderstanding of *In re Nafe* (1965) 237 Cal.App.2d 809, 812 [47 Cal.Rptr. 457], and *In re Roberts* (1953) 40 Cal.2d 745, 749 [255 P.2d 782]. Neither of those cases holds or suggests, as petitioner argues, that a court that has withheld imposition of sentence and granted probation is without power thereafter to make its sentence consecutive to another sentence imposed while the defendant was on probation.

---

noted above. I understand that I am not to appear personally or to have representation by counsel.''

On May 12 the probation officer filed with the San Joaquin County Superior Court a report directing the court's attention to petitioner's situation and his just quoted written request. On May 23 the matter of the revocation of petitioner's probation and imposition of sentence came before the court. The public defender appeared on petitioner's behalf to request that the sentence run concurrently. The court, however, ordered that the sentence run consecutively for the stated reason that ''I see that this [issuance of checks without sufficient funds] is an old habit of this man—started out in 1964 before they caught up with him in February of this year and apparently prior to that time, between the time of cashing the checks in this County and the present time, he had three other counties after him for the same offenses.''

[6]According to the Attorney General's points and authorities, the sentencing judge advises that his initial order that the sentence run consecutively was based on his understanding that ''petitioner's other offenses had occurred subsequent to the granting of probation,'' and when the judge learned that the other offenses had been committed before the granting of probation ''he directed entry of the corrected judgment.''

The order of the San Joaquin County Superior Court purporting to make its sentence run concurrently with the previously imposed sentence of the Stanislaus County Superior Court is set aside and the Adult Authority is directed to consider the sentence as consecutive in accordance with the judgment pronounced on May 23, 1966. The order to show cause is discharged and the petition for a writ of habeas corpus is denied.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Peek, J.,* concurred.

Petitioner's application for a rehearing was denied February 1, 1967.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.