[Civ. No. 38628. First Dist., Div. Two. June 22, 1977.]

In re AARON N., a Person Coming Under the Juvenile Court Law.
LOREN A. BECKLEY, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
AARON N., Defendant and Appellant.

**COUNSEL**

James A. Sibley, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Ronald E. Niver, Robert R. Granucci and J. Patrick Collins, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

KANE, J.—Defendant appeals from an order of the juvenile court committing him to the Youth Authority for violation of section 602, subdivision (j), and sections 664 and 488 of the Penal Code of California.

By a petition filed on November 14, 1975, appellant, then 16 years old, was charged with burglary in violation of Penal Code, section 459. Prior to his arrest, appellant had already acquired a lengthy record showing repeated violations of law and court orders, and erratic and disruptive behavior, and had been adjudged a ward of the court pursuant to Welfare and Institutions Code,[1] sections 601 and 602.

Listed in chronological order, the record shows that on May 11, 1973, appellant was referred to the probation department and placed on informal supervision for committing burglary and malicious mischief. On December 21, 1973, at age 14, he was declared a ward of the court under section 601 for being beyond parental control, running away from home, and acting in an incorrigible manner. On March 21, 1974, he was declared a ward of the court under section 602 and placed at the Ahwahnee School for driving without a license and reckless driving. On April 11, 1974, he was committed to Camp Glenwood, from which he ran away shortly thereafter. Subsequently, after apprehension, he was released to reside with his sister in a neighboring community. On May 8, 1974, the minor was found to have violated section 148 of the Penal Code, by resisting a public officer, and on November 1, 1974, he was found to have committed arson and burglary in violation of Penal Code, sections 447a and 459, and was placed with his uncle in Riverside,

---

[1]Unless otherwise indicated, all references will be made to the Welfare and Institutions Code of California.

California. He returned home to his mother the last week of February 1975, but shortly thereafter, on February 27, 1975, he was again arrested for abusing a school teacher, in violation of Education Code, section 13560, and was placed in the Nairobi School Program on March 24, 1975, pending acceptance into the Day Care Program. On June 11, 1975, another petition charging appellant with criminal trespass (Pen. Code, § 602, subd. (j)) was sustained, whereupon he was placed under continued supervision of the probation department in his home. Having been found again beyond parental control on September 26, 1975, he was enrolled in the Day Care Program on October 1, 1975. On October 16, 1975, appellant was found to be beyond the control of the Day Care Center's custodians, and was accused of activating a fire alarm at a shopping center. As a consequence, he was returned to the Day Care Center on October 29, 1975. The record additionally reveals that appellant's academic achievement in the community schools was less than satisfactory; that the school teachers found it difficult to remedy appellant's academic deficiencies because of his behavioral pattern in the classroom; that appellant's activities in the community led to contacts with delinquent individuals who were more sophisticated than appellant; and that appellant's mother expressed fear for his safety because of his contacts with more mature criminals.

Faced with the foregoing record, the probation officer recommended that appellant be committed to the California Youth Authority (Youth Authority). After evaluating the probation report, the resources review board of the probation department also took the position that appellant would best benefit from the Youth Authority program. At the December 5, 1975, juvenile court hearing, a plea bargain resulted in the original burglary charge being dropped, and appellant was allowed to plead guilty to the lesser charges of trespass (Pen. Code, § 602, subd. (j)) and attempted petty theft (Pen. Code, §§ 488, 664). He was thereupon committed to the Youth Authority, pursuant to section 1769.

On appeal, appellant contends that the commitment is constitutionally infirm on several grounds. Succinctly stated, appellant claims that while the misdemeanors to which he pleaded guilty carry a maximum jail sentence of six or three months (Pen. Code, §§ 19, 490, 664, subd. 1), the commitment to custody and control of the Youth Authority may result in a confinement of two to five years or longer (cf. §§ 1769, 1802). This disparity of incarceration, continues appellant, is violative of the equal protection and due process clauses of the Constitution as well as the constitutional provisions proscribing cruel and unusual punishment.

Appellant's arguments, however, have now been resolved by way of statutory amendments, and as a consequence these particular constitutional issues raised by appellant need not be discussed or decided (*Syrek v. California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519, 526-527 [7 Cal.Rptr. 97, 354 P.2d 625]). In *People v. Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], upon which appellant primarily relies, our Supreme Court concluded that youthful misdemeanants may not be subjected to the control of the Youth Authority for any period of time in excess of the maximum jail term that might be imposed upon adult misdemeanants committing the same offense.

In conformity with *Olivas,* in 1976 the California Legislature amended the Juvenile Court Law (§ 500 et seq.) in several areas which concern both the Youth Authority and local juvenile authorities. Effective January 1, 1977, section 726 provides that a minor who has been declared a ward of the court under section 602 may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense which brought the minor under the jurisdiction of the juvenile court (see to the same effect § 731).[2] ▮▮▮ Although the length of the maximum *commitment* imposable under section 1769 was neither

---

[2]Section 726, as amended in 1976, reads in part that "In any case in which the minor is removed from the physical custody of his parent or guardian as the result of an order or wardship made pursuant to Section 602, the order shall specify that *the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense which brought the minor under the jurisdiction of the juvenile court.* 'Physical confinement,' for purposes of this section, *means placement in* a juvenile home, ranch, camp, or forestry camp pursuant to Section 730, in *any institution operated by the Youth Authority.* Nothing in this section limits the power of the court to retain the minor on probationary status for the period permitted by Section 607, and the court may permit a minor to remain in any home or placement facility beyond such maximum term upon the minor's voluntary request." (Italics added.) (Stats. 1976, ch. 1071, § 29.)

Section 731 provides that "When a minor is adjudged a ward of the court on the ground that he is a person described by Section 602, the court may order any of the types of treatment referred to in Sections 727 and 730, and, in addition may order the ward to make restitution or to participate in uncompensated work programs or may commit the ward to a shelter-care facility or may order that the ward and his family or guardian participate in a program of professional counseling as arranged and directed by the probation officer as a condition of continued custody of such minor or may commit the minor to the Youth Authority. [¶] *A minor committed to the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense which brought the minor under jurisdiction of the juvenile court.* Nothing in this section limits the power of the Youth Authority to retain the minor on parole status for the period permitted by Section 1769." (Italics added.) (Stats. 1976, ch. 1071, § 30.)

modified nor altered by the 1976 legislation,[3] it is clear that the limitation of *physical confinement* set out in sections 726 and 731 is applicable to the commitment provided in section 1769 as well. Moreover, it is also indisputable that the sections referred to above operate retroactively and must therefore be applied to the case at bench. ■ It is well settled that where, as here, a statute mitigating punishment becomes effective after the commission of the prohibited act but before final judgment, the lesser punishment provided by the new law must be applied in the absence of an express statement to the contrary by the Legislature (*In re Estrada* (1965) 63 Cal.2d 740, 744-745 [48 Cal.Rptr. 172, 408 P.2d 948]; *People* v. *Francis* (1969) 71 Cal.2d 66, 75-76 [75 Cal.Rptr. 199, 450 P.2d 591]; *In re Moreno* (1976) 58 Cal.App.3d 740, 742 [130 Cal.Rptr. 78]). ■ It follows that when sections 726, 731 and 1769 are read together and harmonized (*People* v. *Seeley* (1902) 137 Cal. 13, 15 [69 P. 693]; *Natural Resources Defense Council, Inc.* v. *Arcata Nat. Corp.* (1976) 59 Cal.App.3d 959, 965 [131 Cal.Rptr. 172]), the conclusion is inescapable that *as a matter of statute* appellant's physical confinement by the Youth Authority may not exceed six or three months, respectively, for the two misdemeanor violations designated in the commitment order.

■ Respondent contends, however, that in determining the length of the physical confinement under sections 726 and 731, we should consider (as did the trial court) the entire record of appellant, and that the maximum term of the Youth Authority commitment should be measured by the most grievous offense of which appellant was found guilty, i.e., arson and burglary committed by him in 1974.

■ We are, of course, in full agreement with respondent that the purpose of the Youth Authority Act is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young

---

[3]Section 1769, as amended in 1976, provides that "(a) Every person committed to the authority by a juvenile court shall, except as provided in subdivision (b), be discharged upon the expiration of a two-year period of control or when the person reaches his 21st birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800). [¶] (b) Every person committed to the authority by a juvenile court who has been found to be a person described in Section 602 by reason of the violation, when such person was 16 years of age or older, of any of the offenses listed in subdivision (b) of Section 707, shall be discharged upon the expiration of a two-year period of control or when the person reaches his or her 23rd birthday, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with Section 1800)." (Stats. 1976, ch. 1071, § 34.)

persons found guilty of public offenses (§ 1700; *People* v. *Mack* (1969) 2 Cal.App.3d 724, 729-730 [82 Cal.Rptr. 771]; see also *In re J. L. P.* (1972) 25 Cal.App.3d 86, 89 [100 Cal.Rptr. 601]; *In re Carey* (1922) 57 Cal.App. 297, 301-302 [207 P. 271]). In order to achieve this goal, the Youth Authority should be, and is, granted wide latitude and vested with broad discretionary power in the treatment and discharge of persons committed to it (§§ 1762, 1766, 1768). It likewise bears special emphasis that both under statutory and case law, in determining how long to retain supervision over a ward, the Youth Authority not only may, but must, consider acts of misconduct by the ward subsequent to the initial adjudication of wardship by the juvenile court (§ 1761). By parity of reasoning, the very same should be held applicable to previous instances of misbehavior or criminal conduct of the delinquent juvenile which is but another way of expressing the view that in determining the duration of Youth Authority supervision, control or custody, the whole record of the juvenile ought to be considered.

The proposition that in measuring the maximum extent of physical confinement the entire record of the juvenile may be regarded and that as a yardstick the most serious offense committed by the delinquent youth may be taken into account, is supported rather than contradicted by the language of sections 726 and 731. As pointed out earlier, the purpose of these sections is to treat adult and juvenile offenders on equal footing as far as the duration of their incarceration is concerned. Accordingly, sections 726 and 731 provide only that the physical confinement of a section 602 ward may not be longer than the maximum term of imprisonment which may be imposed upon an adult convicted of the offense which brought the minor under the jurisdiction of the juvenile court. Section 602 makes it explicit that the juvenile court obtains jurisdiction over a minor who violates any criminal provision of the state or federal law or local ordinance.[4] ■ It follows that where, as here, the minor violates several provisions of criminal law by his repeated misconduct for which he is declared a section 602 ward of the court, each and every criminal violation may constitute the offense which brings him under the jurisdiction of the juvenile court and may serve as a measurement for his physical confinement under the broad language of

---

[4]Section 602, as amended in 1976, provides that "*Any person who is under the age of 18 years* when he *violates any law* of this state or of the United States or any ordinance of any city or county of this state *defining crime* other than an ordinance establishing a curfew based solely on age, *is within the jurisdiction of the juvenile court*, which may adjudge such person to be a ward of the court." (Italics added.) (Stats. 1976, ch. 1071, § 12.)

sections 726 and 731 without violating the basic precept of equal treatment of the adult and juvenile offenders.[5]

■ Appellant's contention that the consideration of the juvenile's entire record and/or a prior criminal offense for which some kind of punishment had already been imposed violates the constitutional proscription against double jeopardy or the provisions of section 654 of the Penal Code prohibiting multiple punishment, is obviously misplaced. It is well recognized that double jeopardy prohibits a second prosecution of the same individual for the same offense (*Howard* v. *United States* (9th Cir. 1967) 372 F.2d 294, 297). Using a prior offense for the purpose of determining the duration of physical confinement under the amended statute is clearly not a second prosecution, and, therefore, not violative of the constitutional doctrine of double jeopardy. It is likewise established that Penal Code, section 654, which bans multiple punishment for the same offense, is not applicable to juvenile delinquency proceedings. This is so, because the purpose of the Youth Authority Act is to provide for correction and rehabilitation of youthful offenders rather than to provide for their punishment (*In re Benny G.* (1972) 24 Cal.App.3d 371, 375 [101 Cal.Rptr. 28]; *People* v. *Stevenson* (1969) 275 Cal.App.2d 645, 650-653 [80 Cal.Rptr. 392]; *People* v. *Wheeler* (1969) 271 Cal.App.2d 205, 209 [76 Cal.Rptr. 842]).

■ Although the foregoing reasons impel the deduction that in an appropriate case the entire record of the juvenile may be taken into account, and that the maximum length of physical confinement under

[5]As far as the question of equal treatment is concerned, we parenthetically note that an adult convicted of multiple offenses may receive an augmented sentence; an adult with a prior felony conviction who is found guilty of a subsequent felony will receive at least a two-year minimum sentence (Pen. Code, § 3024); and an adult who was armed or who used a firearm during the commission of the offense at issue may receive a greater punishment (Pen. Code, §§ 3024, 12022, 12022.5). In addition, Penal Code sections 667.5, 1170.1a, 12022.6 and 12022.7, as added by, and sections 12022 and 12022.5 as amended by, the Uniform Determinate Sentencing Act of 1976 (Stats. 1976, ch. 1139, §§ 268, 273, 305.5, 306, 304 and 305, respectively, and which become operative on July 1, 1977), provide for the enhancement of prison terms for adult defendants convicted of new offenses who have served prior prison terms, who have committed certain aggravated felonies, who have been armed or have used a firearm in the commission of the offense at issue, or who have inflicted excessive damages to property or injuries to persons. Needless to say that the above criminal provisions enhancing the punishment of recidivist adult criminals may not be ignored in ascertaining the maximum period of physical confinement of recidivist juvenile delinquents if the fundamental premise of equal treatment is to have any meaning at all.

sections 726 and 731 may be measured by the most serious criminal offense of which the minor has been found guilty, the record before us does not indicate that this is such a case.

While there is some indication that the court *considered* appellant's whole background in committing him to the Youth Authority, there simply is no statement by the court that the actual commitment was based thereon or that the maximum term should be governed by the prior felonies of arson and/or burglary.[6] Additionally, the commitment order issued on December 10, 1975, is clear and unmistakable that appellant's Youth Authority commitment was based solely on the misdemeanors of trespass (Pen. Code, § 602, subd. (j)) and attempted petty theft (Pen. Code, §§ 488, 664). ■ Further, and more importantly, it is well settled that juvenile proceedings which may result in substantial loss of personal freedom are regarded as quasi-criminal in nature, and as a consequence the fundamental notions of due process and fairness must be strictly observed (§ 702.5; *In re Winship* (1970) 397 U.S. 358, 369 [25 L.Ed.2d 368, 378, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1, 34-57 [18 L.Ed.2d 527, 550-563, 87 S.Ct. 1428]; *In re Robert T.* (1970) 8 Cal.App.3d 990 [88 Cal.Rptr. 37]; *In re Roderick P.* (1972) 7 Cal.3d 801, 810 [103 Cal.Rptr. 425, 500 P.2d 1]; *In re Francis W.* (1974) 42 Cal.App.3d 892, 898 [117 Cal.Rptr. 277]; *In re Arthur N.* (1976) 16 Cal.3d 226, 239-240 [127 Cal.Rptr. 641, 545 P.2d 1345]).

■ In short (and for the guidance of juvenile courts hereafter), we hold that before a minor may be committed to the Youth Authority based on his entire record and/or that the maximum term should be governed by some prior criminal act for which a petition has been sustained, the court must advise the minor of its intention to do so and afford the minor an opportunity to be heard prior to the commitment.

Since the maximum period of incarceration which could have initially been imposed (six months) has already expired, appellant must be released from custody if not otherwise under lawful restraint. The order is modified to provide that appellant's commitment to the Youth

---

[6]Although the court's comment that "we have tried and tried and tried and we just can't go for another loss, another failure . . ." confirms the fact that the court was acutely aware of and considered appellant's entire record, it is insufficient to satisfy the requirements of adequate notice that a potentially longer commitment to the Youth Authority was being ordered.

Authority be terminated upon the finality of this decision. As so modified the order is affirmed.

Taylor, P. J., and Rouse, J., concurred.

A petition for a rehearing was denied July 22, 1977, and respondent's petition for a hearing by the Supreme Court was denied August 18, 1977.