[Civ. No. 18895. Fourth Dist., Div. One. June 26, 1980.]

In re EUGENE R., a Person Coming Under the Juvenile Court Law. THE PEOPLE, Plaintiff and Respondent, v. EUGENE R., Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, and John F. Bowman for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Yvonne H. Behart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, J.—Eugene R. appeals from a dispositional order of the juvenile court continuing his status as a ward (Welf. & Inst. Code, § 602; all references are to the Welfare and Institutions Code unless otherwise indicated) and committing him to the California Youth Authority (CYA). We conclude the juvenile court was without jurisdiction to modify on its own motion its original dispositional order. We reverse the modified dispositional order and direct the juvenile court to reinstate the original order. We also decide that (1) although a current social study must be prepared before every dispositional hearing unless waived, Eugene did not suffer any prejudice; (2) the juvenile court did not abuse its discretion in committing him to CYA; (3) the juvenile court erred in failing to set the maximum term for felony vehicle theft; (4) the juvenile court did not otherwise err in aggregating on his prior

offenses; and (5) he is entitled to presentence behavioral credit similar to that which an adult would receive.

*Factual and Procedural Background*

On March 23, 1979, a section 602 petition was filed alleging in count one that Eugene, on March 22, 1979, unlawfully committed an assault on Dennis Wheeler, duty supervisor at Rancho del Rayo (Pen. Code, § 240) and in count two that he had unlawfully resisted, delayed and obstructed Police Officers Wheeler and Bill Hickman in the discharge of their official duties (Pen. Code, § 148). The petition was amended on March 30, 1979, alleging in count three that he had taken a vehicle on August 15, 1978, with the intent to deprive the owner of possession (Veh. Code, § 10851).

At the readiness hearing on April 5, 1979, Eugene appeared with counsel. With the approval of his attorney and the district attorney, he admitted the motor vehicle theft charge in count three and the remaining counts were dismissed. The court then fixed the maximum term of commitment to CYA at 3 years and 10 months with credit for 124 days served. This aggregated term included two years as the base term for the felony vehicle theft; one year on a felony assault with a deadly weapon based upon a petition dated January 23, 1979; four months for tampering with a vehicle based upon a petition dated April 28, 1977; a total of four months for two theft offenses arising out of a petition filed on July 21, 1978; and two months for a misdemeanor contempt arising from a petition dated July 11, 1977. The probation officer was then authorized to immediately deliver him to CYA.

Following issuance of the April 5 order, the court on its own motion gave notice to the probation officer of its intent to hold a hearing in order "to review Eugene's maximum commitment time and days in custody." The probation officer in turn gave notice to the minor's counsel. At the hearing held on April 12, 1979, the court modified its earlier order by committing Eugene to CYA for a maximum term of three years and eight months with credit for sixty-eight days served. This modified aggregated term included three years as the base term for felony assault with a deadly weapon arising from the January 23, 1979 petition, and eight months for the vehicle theft arising from the amended petition of March 30, 1979.

*The Juvenile Court Was Without Jurisdiction*
*to Modify Its April 5 Order of Commitment*

■ "After conviction of a felony and where probation is denied, the court must pronounce judgment upon the defendant by imposing a fine or a sentence of imprisonment. [Citations.] Judgment must be pronounced orally in the presence of the defendant, and it must reflect the court's determination of the matter before it. [Citation.]" (*People* v. *Hartsell* (1973) 34 Cal.App.3d 8, 13 [109 Cal.Rptr. 627].) Where the minutes, through clerical error, fail to reflect the judgment pronounced by the court the record can be corrected at any time. However, "[j]udicial error in the pronouncement of judgment...can only be corrected in two circumstances: (1) where the judgment as pronounced is not merely erroneous but void for lack of jurisdiction [citations]; and (2) where the modification of the judgment as pronounced is made before the judgment is entered in the minutes and before the defendant is placed under the restraint of his sentence [citations]." (*Ibid.*) In other words, where a defendant has commenced serving the sentence, the court has no jurisdiction to vacate or modify the sentence as pronounced and formally entered in the minutes in an attempt to revise its deliberately exercised judicial discretion unless the sentence was improper on its face. (*In re Wimbs* (1966) 65 Cal.2d 490, 498 [55 Cal.Rptr. 222, 421 P.2d 70]; *People* v. *McAllister* (1940) 15 Cal.2d 519, 526 [102 P.2d 1072]; *People* v. *Getty* (1975) 50 Cal.App.3d 101, 107 [123 Cal.Rptr. 704].)

■ The foregoing procedural rule should also apply to juvenile matters. Although denominated as civil in nature, the courts have long recognized and emphasized that original section 602 and supplementary juvenile proceedings are quasi-criminal in nature. Ramifications of a section 602 hearing include a possible finding that the alleged criminal conduct is true, resulting in a substantial loss of personal freedom. (*Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 801 [91 Cal.Rptr. 594, 478 P.2d 26]; *In re Francis W.* (1974) 42 Cal.App.3d 892, 898 [117 Cal. Rptr. 277].) Rule 39 of the California Rules of Court expressly provides for the application of the general rules relating to criminal appeals to all juvenile appeals.[1] The Judicial Council in its advisory committee

---

[1]Rule 39(a) provides in pertinent part: "The rules governing appeals from the superior court in criminal cases are applicable to all appeals from the juvenile court except where otherwise expressly provided by this rule, or where the application of a particular rule would be clearly impracticable or inappropriate."

comment accompanying rule 39 explains that such application "would better enable the appellate courts to implement the legislative policy that juvenile court matters be handled expeditiously at the appellate as well as at the trial court level [citations]."

When we apply the jurisdictional rule in controversy to juvenile proceedings, the cited legislative policy is promoted and the criminal appellate rules are followed. To conclude otherwise and allow collateral modification based upon another judge's view of abuse of discretion would inevitably promote "judge-shopping" and sanction delay.

The Attorney General responds that at any time during the period of continued jurisdiction of the juvenile court over a minor, the court may change, modify, or set aside any order it has previously made with respect to him. (§ 775; *In re Francis W., supra,* 42 Cal.App.3d at p. 897.) Granted the juvenile court has continuing jurisdiction over the minor; however, such jurisdiction must be properly activated by petition or application and cannot be exercised on the court's own motion without procedural statutory authority. Section 775 explicitly provides that: "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, *subject to such procedural requirements as are imposed by this article.*" (Italics added; see also Cal. Rules of Court, rule 1391(a).) Article 20, sections 775 through 779 read together, does not authorize the juvenile court to modify a previous order on its own motion. If such power was inherent or provided for by section 775, then the Judicial Council and the Supreme Court would not have enacted rule 1391(d) of the California Rules of Court in the narrow manner written providing for the correction of only clerical errors in judgments, orders and the record by the court at any time on its own motion.

Accordingly, the April 12 order was void since the juvenile court was without jurisdiction to modify it. The April 5 order thus remains in effect and is the subject of controversy within Eugene's remaining contentions on this appeal.[2]

---

[2]Contrary to the Attorney General's assertion, the April 5 order is properly before us on this appeal in light of our conclusion the modified order of April 12 was void, causing the former to remain in effect. Eugene's notice of appeal properly complied with section 800 and Penal Code section 1240.1.

*Unless Waived, a Current Social Study Must Be Prepared Before Every Dispositional Hearing*

▪ Eugene next asserts the order of commitment should be reversed and a new dispositional hearing held since the juvenile court did not have a current social study before it. Although it is mandatory that a current social study be prepared by the probation officer before every dispositional hearing, and received by the court, unless waived, the failure to do so here was not prejudicial to Eugene.

Section 280 provides "[i]t shall be the duty of the probation officer to prepare for every hearing on the disposition of a case provided by section 356 or 702 a social study of the minor, containing such matters as may be relevant to a proper disposition of the case. Such social study shall include a recommendation for the disposition of the case." This duty constitutes a "mandatory" responsibility. (*Holt* v. *Superior Court* (1960) 186 Cal.App.2d 524, 527 [9 Cal.Rptr. 353].) When hearing evidence on the question of the proper disposition to be made of the minor, section 706 provides "[t]he court shall receive in evidence the social study of the minor made by the probation officer . . . ." The mandatory nature of the probation officer's preparation of the social study before every dispositional hearing and the court's receipt of the study in evidence is sustained by California Rules of Court, rules 1302(b)(1)[3] and 1371(b) and (d).[4] It is further consistent with the legislative purposes of the Juvenile Court Law.[5]

---

[3]Rule 1302(b)(1) regarding construction of terms provides "shall" is mandatory and "may" is permissive.

[4]Rule 1371 provides in pertinent part: "(b) Prior to every disposition hearing, the probation officer shall prepare a social study concerning the minor, which shall contain those matters relevant to a proper disposition of the case and a recommendation for the disposition of the case. If the minor is a parolee of the Youth Authority, the social study shall include the results of any contact between the probation officer and the parole officer. The social study shall be furnished to all parties at least 48 hours prior to the commencement of the disposition hearing by depositing copies with the clerk. A continuance of 48 hours shall be granted upon request of any party who has not been furnished the probation officer's report in accordance with this rule.

" . . . . . . . . . . . . .

"(d) The court shall receive in evidence the social study prepared by the probation officer and other relevant and material evidence offered by the petitioner, the minor, or the parent or guardian. The court may receive other relevant and material evidence on its own motion. In any judgment and order of disposition, the court shall state the social study has been read and considered by the court."

[5]Section 202 provides in pertinent part: "(a) The purpose of this chapter is to secure for each minor under the jurisdiction of the juvenile court such care and guidance, .

Since the error complained of is not of constitutional dimension, the dispositional order will not be set aside unless the error is deemed to be prejudicial to Eugene. The determinative issue before us is whether it is reasonably probable that had the juvenile court received in evidence a current social study before disposition, a result more favorable to the minor would have occurred. (See *In re Ronald E.* (1977) 19 Cal.3d 315, 325 [137 Cal.Rptr. 781, 562 P.2d 684]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) For the reasons which follow, we conclude reversal is not required.

On February 21, 1979, a complete social study was filed in conjunction with the dispositional hearing on the petition dated January 23, 1979, alleging Eugene had committed an assault with a deadly weapon (Pen. Code, § 245, subd. (a)). On March 30, 1979, the probation officer filed a "Readiness Hearing Information" report pertaining to the petition of March 23, 1979, setting forth the jurisdictional facts, the minor's prior record and an independent evaluation.[6] During the interim between the two petitions, Eugene was detained in juvenile hall and committed to the Lightning Program at the San Diego County Juvenile Ranch Facilities, from which he was expelled for assaulting staff. Consequently, the latter report in essence updated by supplement the reasonably "current" February 21 social study. Thus, by merging the reports together, we conclude there was substantial compliance with the requirement in controversy, as we can find no prejudice to Eugene under the circumstances of his incarceration during the interim.

preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor and the best interests of the state; to protect the public from criminal conduct by minors; to impose on the minor a sense of responsibility for his own acts; to preserve and strengthen the minor's family ties whenever possible, removing him from the custody of his parents only when necessary for his welfare or for the safety and protection of the public; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes.

"(b) The purpose of this chapter also includes the protection of the public from the consequences of criminal activity, and to such purpose probation officers, peace officers, and juvenile courts shall take into account such protection of the public in their determinations under this chapter."

[6]The "Readiness Hearing Information" report provided:

"JURISDICTIONAL FACTS: (Describe each offense; attach copy of petition.)

On 3-22-79 Eugene was disciplinarily removed from the Lightning Unit for attempted assault on staff. Eugene was expelled from school and was sent to the staff office. Eugene would not go; a staff member went out to escort him to the office. When in the office, Eugene was hostile and uncooperative. He was asked to sit down, refused, and made a threatening move. Staff controlled him. Eugene hit and kicked at staff until subdued.

*Commitment to CYA Was Proper*

Eugene contends the juvenile court abused its discretion in committing him to CYA because the less restrictive alternative of camp had not been tried first although justified by his record.

PRIOR RECORD:

| Date | Offense | Disposition | Max. Conf. Time | Days In Custody |
|------|---------|-------------|-----------------|-----------------|
| *9-19-69 | Dependent child petition | Dep. child/ RH/600 | Dep. child until 1977 | |
| 4-26-77 | Tampering w/mother's vehicle | Ward/602/RH | 1 year | 20 days |
| 7-7-77 | Contempt of Court; runaway | Cont. ward; 24-hour school order | 6 mos. | 0 |
| 10-3-77 | | Physically placed at Boys & Girls Aid | 0 | 11 days |
| 10-14-77 | AWOL from Boys & Girls Aid | Detention order issued | | |
| 2-14-78 | Picked up on detention order | Detained JH; T/F on Contempt of Court; petition dismissed; jurisdiction terminated. | 0 | 33 days |
| 5-5-78 | Petty theft) | Ward; OH; Form 52 (1-5) | 6 mos. | 0 |
| 6-29-78 | Petty theft) | | 6 mos. | 0 |
| 1-6-79 | Assault with a deadly weapon | 2-5-79 -T/F; detained in JH | 4 years | 18** days |

*Comprehensive note*: Eugene spent from 1969 to 1977 in his father's home, relatives' homes and in foster homes.
[**Detention period recomputed in court to 60 days—2/5/79 through 4/5/79.]

EVALUATION:
Eugene has no self-control. He acts out his frustrations early and in a dangerous manner. He is neurotic and anti-social. He has been rejected and scorned most of his life. Ergo, he has developed the habit of acting out when mildly provoked. Lightning Unit does not want him back and Camp seems inappropriate due to his bizarre behavior. We are considering a CYA recommendation.

RECOMMENDATION:
1. _x_ True Finding
2. _x_ ~~Declare~~/Continue Ward per Section *602*
3. _____ Dismiss petition
4. _x_ Case continued for Social Study at a date as set by the Court."

■ The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion in committing the minor to CYA. An appellate court will not lightly substitute its decision for that of the juvenile court, as the former must indulge in all reasonable inferences in support of the latter's decision and will not disturb it unless unsupported by substantial evidence. (*In re Todd W.* (1979) 96 Cal.App.3d 408, 416 [157 Cal.Rptr. 802]; *In re Carrie W.* (1979) 89 Cal.App.3d 642, 649 [152 Cal.Rptr. 690]; *In re Michael R.* (1977) 73 Cal.App.3d 327, 332-333 [140 Cal.Rptr. 716]; *In re Willy L.* (1976) 56 Cal.App.3d 256, 265 [128 Cal.Rptr. 592]; *In re Clarence B.* (1974) 37 Cal.App.3d 676, 682 [112 Cal.Rptr. 474].) ■ Consequently, since "[j]uvenile commitment proceedings are designed for the purposes of rehabilitation and treatment, not punishment," a CYA commitment "must be supported by a determination, based upon substantial evidence in the record, of probable benefit to the minor." (*In re Aline D.* (1975) 14 Cal.3d 557, 567 [121 Cal.Rptr. 816, 536 P.2d 65].)

■ Commitment to CYA is "the final treatment resource" available to the juvenile court. As such, it is treated as a placement of "last resort," proper only in the most serious cases after all else has failed. (*Id.,* at p. 564.) Although the Juvenile Court Law "contemplates a progressively restrictive and punitive series of disposition orders" (*ibid.*), it is not required to proceed in a "mechanical lock-step" manner through each possible disposition, but only that "the rejection of lesser remedies be supported by evidence on the record of their inappropriateness necessitating use of the California Youth Authority . . . ." (*In re Michael R., supra,* 73 Cal.App.3d at pp. 336-337.) Accordingly, "the circumstances in a particular case may well suggest the desirability of a Youth Authority Commitment despite the availability of such alternative dispositions as placement in a county camp or ranch." (*In re John H.* (1978) 21 Cal.3d 18, 27 [145 Cal.Rptr. 357, 577 P.2d 177].)

■ The record amply supports the court's decision to commit Eugene to CYA. The appropriateness of the commitment is attested to by the progressive criminality of his prior record; the apparent ineffectiveness of the alternative rehabilitative orders and placements, including his placement in a 24-hour school, in his home, on probation, ordered to attend school, placement in the Lightning Unit of a juvenile ranch facility to be ultimately removed for his violent and hostile behavior, and several detentions in juvenile hall; and, the probation officer's evalua-

tion noting Eugene's lack of self-control, neurotic and antisocial nature and his dangerous tendency of acting out of line upon the mildest of provocation, as well as noting that ranch staff did not want him back due to his assaultive behavior toward them and that he seems to be an inappropriate candidate for juvenile camp facilities.[7] (Cf. *In re Zardies B.* (1976) 64 Cal.App.3d 11 [134 Cal.Rptr. 181].) We also note Eugene's trial counsel neither argued in favor of the appropriateness of alternative, less restrictive placement nor objected in any manner to the CYA commitment.

## *The Juvenile Court Erred in Failing to Set the Maximum Term for Felony Vehicle Theft*

■ The Attorney General correctly asserts the juvenile court acted contrary to the express mandate of section 726 when it failed to specify the maximum period of confinement for vehicle theft.[8] A juvenile court judge does not have discretion to determine a minor's maximum term of commitment to CYA, as section 726 "is clearly directive and requires the juvenile court judge to automatically specify in his commitment order the maximum period of confinement corresponding to the applicable upper terms set forth in Penal Code, section 1170, subdivision (a)(2)." (*In re James A.* (1980) 101 Cal.App.3d 332, 339 [161 Cal. Rptr. 588].) Accordingly, Eugene's principal term must be modified to reflect the maximum term for felony vehicle theft, three years. (*Ibid.*; § 726; Veh. Code, § 10851; Pen. Code, § 18.)

---

[7]See footnote 6, *ante.*

[8]This point was first raised by the Attorney General in a petition for rehearing. Eugene contends the assertion was untimely. He also argues that even if the contention is meritorious, it is improper to modify upward his punishment as a result of his appeal. We must, however, permit the Attorney General's belated assertion of this issue under the compulsion of *People* v. *Serrato* (1973) 9 Cal.3d 753, 763 [109 Cal.Rptr. 65, 512 P.2d 289], holding that an unauthorized sentence is subject to judicial correction whenever the error comes to the attention of the trial court or a reviewing court. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; see also, *People* v. *Benton* (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12]; *People* v. *Cabral* (1975) 51 Cal.App.3d 707, 717-718 [124 Cal.Rptr. 418]; *People* v. *Massengale* (1970) 10 Cal.App.3d 689, 693 [89 Cal.Rptr. 237].) Such is the case, regardless of the imposition or potentiality of a more severe punishment. (*People* v. *Serrato, supra*, 9 Cal.3d at pp. 764-765; *In re Sandel* (1966) 64 Cal.2d 412, 418 [50 Cal.Rptr. 462, 412 P.2d 806]; *People* v. *Cabral, supra*, 51 Cal.App.3d at pp. 717-718; *People* v. *Massengale, supra*, 10 Cal.App.3d at p. 693.)

*The Juvenile Court Did Not Otherwise Err in
Aggregating on Eugene's Prior Offenses*

■ Eugene challenges the propriety of his aggregated maximum term of confinement by first asserting that sentencing on his prior contempt and tampering offenses violated the prohibitions against double jeopardy (Pen. Code, § 687) and double punishment (Pen. Code, § 654).[9] Regarding the former, the use of a prior offense for the purpose of aggregation clearly does not constitute a second prosecution, and thus does not violate the prohibition against double jeopardy. (See *In re Aaron N.* (1977) 70 Cal.App.3d 931, 940 [139 Cal.Rptr. 258].) As to the latter, Penal Code section 654, by its very language, expressly does not apply, since aggregating the term of confinement based upon a current petition with a previously sustained petition necessarily involves more than a single act or course of conduct. Further, we note Eugene received full credit for all time spent in custody in connection with the contempt and tampering offenses.

■ Eugene also contends the court improperly aggregated his term of confinement by his previously sustained petitions, since a section 777 supplemental petition was not filed. It is not necessary to determine whether a section 777 supplemental petition is the sole statutory and procedural mechanism implementing aggregation under section 726 (see *In re Michael B.* (Cal.App.), petition for hg. granted by Supreme Court on June 12, 1980, L.A. 31275), since the failure to comply with section 777 under the circumstances here does not require reversal. Eugene was afforded adequate notice of the court's intention to use the prior offenses in determining the maximum aggregate period of confinement and an opportunity to rebut any derogatory material within his prior record. (See *In re Jose P.* (1980) 101 Cal.App.3d 52, 60 [161 Cal.Rptr. 400].) Before admitting the truth of the allegations of the petition and after listening to both counsel and the court discuss aggregation of the previously sustained petitions, Eugene was advised in pertinent part by the court: "If you give up those rights and admit the

---

[9]Contrary to the assertions of the Attorney General, Penal Code section 654 does apply to juvenile court sentencing, since section 726 requires aggregate confinement in accordance with Penal Code section 1170.1, subdivision (a), which, in turn, specifies such consecutive sentencing is subject to Penal Code section 654. *In re Aaron N.* (1977) 70 Cal.App.3d 931, 940 [139 Cal.Rptr. 258], and *In re Benny G.* (1972) 24 Cal.App.3d 371, 375, footnote 3 [101 Cal.Rptr. 28], holding to the contrary, are not controlling since they predate the 1977 amendment to section 726 which implemented the foregoing requirement.

truth of the charge, then this Court has the authority under the law to make whatever order it finds appropriate based upon your conduct in this case and the entirety of your juvenile court record. You've heard our conversation and have understood that if I accumulate all prior charges, it is possible that you could be committed to the California Youth Authority at this time for a period of four years and six months, and that once committed, other circumstances can make it necessary that you be incarcerated even longer, possibly until age 23. Do you understand that?" Eugene replied in the affirmative. Then, before determining the period of confinement, the court inquired of counsel whether they wanted to be heard in mitigation or aggravation. Since neither counsel indicated any desire to be so heard, the court then determined the maximum aggregate period of confinement without objection. The minor was thus not prejudiced by the failure to file a section 777 supplemental petition.

Finally, Eugene's notion the juvenile court judge should give his reasons for electing to aggregate the terms of the minor's previously sustained offenses is without statutory or decisional support. Since a juvenile court judge is not required to make and enter express findings explaining the reasons in favor of his decision to commit a minor to CYA, we can see no reason why he is required to do so here. (See *In re John H., supra*, 21 Cal.3d at pp. 26-27.) ■ Indeed, the juvenile court's fixing of a term is not determinative, as "[i]t is for the Youth Authority, after observation of a minor committed to it, to fix the actual term of his incarceration. That determination, while it cannot exceed the term fixed by the juvenile court, may—and in many cases will—result in fixing an actual term at less than the maximum set forth in the 726 order." (*In re Edward B.* (1979) 94 Cal.App.3d 362, 365 [156 Cal.Rptr. 405].)

*Eugene Is Entitled to Behavioral Credit Similar to That Which an Adult Would Receive*

■ Eugene asserts he is entitled to behavioral credit for predispositional confinement. In light of the holdings of *In re Eric J.* (1979) 25 Cal.3d 522, 535-536 [159 Cal.Rptr. 317, 601 P.2d 549], and *People v. Sage* (1980) 26 Cal.3d 498 [162 Cal.Rptr. 450, 606 P.2d 757], we conclude he is entitled to such behavioral credit.

In *In re Eric J., supra*, our Supreme Court held that a juvenile is entitled to precommitment credit equal to that which an adult would

receive under Penal Code section 2900.5 "in order to carry out the mandate of [Welfare and Institutions Code] section 726, subdivision (c), that a juvenile 'not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted' of the same offenses . . . ." (*Id.*, at p. 536.) In *People* v. *Sage, supra*, at pages 501, 503, 505-507, the court further held that adult convicted felons, although not statutorily entitled to presentence good time credit under Penal Code section 4019, are entitled to such credit under equal protection principles. Accordingly, by merging together the holdings, a juvenile is entitled to behavioral credit, if earned, for presentence confinement.

*Disposition*

The dispositional order dated April 21, 1979, is reversed and the juvenile court is directed to reinstate the dispositional order dated April 5, 1979, modified to provide for the maximum term of three years for the vehicle theft. The California Youth Authority is directed to grant Eugene whatever behavioral credit he has earned during predisposition confinement on his current petition, as well as the previously sustained petitions used in determining his maximum aggregate period of confinement.

Cologne, Acting P. J., and Henderson, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied August 28, 1980. Richardson, J., was of the opinion that the petition should be granted.

---

*Assigned by the Chairperson of the Judicial Council.