[Crim. No. 12604.    Second Dist., Div. Four.    Aug. 4, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ALVIN HURST LLOYD, Defendant and Appellant.

Wolford, Johnson, Pike & Covell and George Pike for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and James H. Kline, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—In a court trial appellant Alvin Lloyd and his codefendant, Vivian Gray, were convicted of possession of marijuana in violation of Health and Safety Code section 11530. Lloyd alone has appealed from the judgment.

On January 23, 1966, at about 5 a.m., a police officer, on routine patrol, observed cars parked near the Gold Mine Bar, and upon approaching, heard voices inside. He knew that within the past month two burglaries of this bar had been reported. Additional officers were sent to assist in the investigation. Two officers tried the rear door and found it unlocked. They entered and saw appellant and Mrs. Gray standing close together near the end of the bar counter. On the bar about 4 or 5 feet from where they were standing were some drinking glasses, bottles, keys, a package of Pall Mall cigarettes, and a piece of wax paper, somewhat in a cupped shape as though it had been folded and unfolded, on which were 11 hand-rolled cigarettes. An officer pointed to these and asked Mrs. Gray, "What is this?" She replied, " 'It's marijuana.' " Appellant said someone had brought it in, but he didn't know who it was. Mrs. Gray said, in substance, " 'For God's sake tell them who brought it in, you know who it was.' "

Both were then placed under arrest. Searching Mrs. Gray's purse, the officer found one cigarette and seven white tablets. Subsequent laboratory examination established that the cigarette taken from the purse and the 11 on the wax paper contained marijuana, and that the white tablets from the purse were amphetamine sulphate.

Appellant testified in substance as follows: He was a plumber by trade, and was regularly employed by a plumbing company at the time of his arrest. He was in the Gold Mine Bar at about 6 p.m. on January 22, when the owner, a personal friend, said he didn't have a barmaid for the evening. Appellant agreed to remain and serve beer (which was the only beverage sold there) and lock up at the 2 a.m. closing time. About 1 a.m. Mrs. Gray, whom appellant knew casually as "Pam," joined the crowd in the bar. Appellant suggested that she remain after closing for a drink with him. While preparing to close the bar just before 2 a.m. he found on the floor a small wax paper package with a rubber band around it. He picked it up and placed it on the bar. He did not know what it contained or where it came from. Later, while he and Pam were alone drinking, he opened it, saw it contained handmade cigarettes, pushed it to one side, and had nothing more to do with it. Between the time the bar closed and the

time the police arrived, according to appellant, "We drank, had conversation, a little smooching."

He was expecting someone to come in and clean about 6 a.m.

Appellant denied that he had ever smoked marijuana or seen a marijuana cigarette. There is no evidence in the record that appellant ever had been involved with any narcotic in any way prior to this occasion.

Appellant also produced his employer in the plumbing trade, the owner of the bar, and others, who corroborated the facts of appellant's employment and testified to his good reputation.

Mrs. Gray told a different story of events after closing. She testified that when she spoke of taking pills, appellant said he had something better, and produced the package of marijuana cigarettes, which had been on a shelf behind the bar, opened the package and handed her three, which he referred to as "reefers." Mrs. Gray said she handed them back. Then, according to her, appellant lit one marijuana cigarette, but she took it away from him and put it out in the ash tray.[1] She said she had no knowledge of the cigarette found in her purse, though she acknowledged that the pills, which she called "Bennies," were hers.

At the close of the trial the judge stated for the record his impressions of the evidence. Among other things, the court said: "As to the Defendant Gray, I think the case is made out, if for no other reason than the one in her purse. That would be sufficient. So as to that defendant, the finding will be guilty as charged.

"As to the Defendant Lloyd, I have difficulty accepting his version. . . . Even if I accept his version that he found it on the floor—and I am not at all sure that I do—he made definitely no effort to get rid of it, to destroy it, to call the police or do anything, and I can't believe that he could spend the time he spent in a bar working as a bartender and not know what it was. It is just too much for me to imagine.

"I think he gave her the one that she had in her purse, and I think if he did that he knew what it was. So I am going to find him also guilty as charged."

The entry of the police into a public bar, through the unlocked door, cannot be attacked as an illegal entry. The

---

[1]There is no evidence that any partially burned cigarette was found by the police. The arresting officer testified that he did not smell any marijuana smoke, and that he did not see any ashes.

circumstances gave them reasonable cause to believe that a burglary was in progress.

The critical question here is the legal sufficiency of the evidence to support the judgment.

"Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic. (*People* v. *Redrick*, 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) The foregoing elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence." (*People* v. *Groom*, 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359].)

The testimony of Mrs. Gray, to which the court presumably gave some credence, supplied evidence of all of the elements of appellant's guilt. A trial court may base its finding on the portion of the testimony it believes, even though it disbelieves other portions of the testimony of the same witness. (*People* v. *Norris*, 223 Cal.App.2d 5, 11 [35 Cal.Rptr. 507].) Assuming that possession of the cigarettes was forced upon appellant when he found the package, it is a reasonable inference that he was exercising the privileges of an owner if, as Mrs. Gray testified, he offered cigarettes to her.

Under this view of the evidence Mrs. Gray was necessarily an accomplice. Hence a conviction cannot be had on her testimony "unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; . . ." (Pen. Code, § 1111.) The application of that rule is explained in *People* v. *Luker*, 63 Cal.2d 464, 469 [47 Cal.Rptr. 209, 407 P.2d 9] : "In order to corroborate the testimony of an accomplice the prosecution must introduce independent evidence which of itself connects the defendant with the crime without any aid from the testimony of the accomplice. The amount and type of evidence necessary to produce such corroboration obviously differs according to the circumstances of each case. [Fn. omitted.] As we recently stated in *People* v. *Holford* (1965) *ante,* pp. 74, 82 [45 Cal.Rptr. 167, 403 P.2d 423], 'The evidence required for corroboration of an accomplice "need not corroborate the accomplice as to every fact to which he testifies but is sufficient if it does not require interpretation and direction from the testimony of the accomplice yet tends to connect the defendant with the commission of the offense in such a way as reasonably may satisfy a jury that the accomplice is telling

the truth; it must tend to implicate the defendant and therefore must relate to some act or fact which is an element of the crime but it is not necessary that the corroborative evidence be sufficient in itself to establish every element of the offense charged." ' "

In the case at bench the only two elements of the offense which were in issue were (1) exercise of dominion and control, and (2) knowledge that the material was a narcotic. Defendant conceded that he had had the package in his hand, but that does not necessarily establish guilt. ▆ It has long been the rule that proof of mere presence at the scene and an opportunity to commit the offense are not sufficient to satisfy section 1111. (*People* v. *Robbins,* 171 Cal. 466 [154 P. 317].)

▆ Contrary to the view expressed by the trial judge, defendant's failure to telephone the police or to flush the cigarettes down the nearest toilet cannot be equated with the exercise of dominion and control. Guilt cannot be based upon the fact that he preferred to give his attentions to "Pam" instead of throwing out the package at once.

There is no evidence defendant knew anything about marijuana except the trial judge's comment that any bartender must know. Considering that the evidence showed that defendant was a plumber, who had worked in the bar just one evening as a favor to a friend, we cannot say the inference is valid as applied to this defendant.

Cases such as *People* v. *Sullivan,* 214 Cal.App.2d 404, 408 [29 Cal.Rptr. 515], are not helpful here. In *Sullivan,* the marijuana was found in a home, in a bed, under a pillow upon which defendant had been sleeping. Cigarettes are not likely to get into such a place by accident, and so when one is found there, it is a reasonable inference that the occupant of the bed placed it there, knowing what it was. No such inference arises from the finding of cigarettes in a public place.

The Attorney General suggests that corroboration may be found in defendant's silence when, in the officers' presence, Mrs. Gray exclaimed, " 'For God's sake tell them who brought it in, you know who it was.' " The most that can be derived from defendant's silence at that point is that he did know who had brought the package in, but he did not want to expose that person after learning what the package contained.

The essence of corroboration is that it must connect the

defendant "in such a way as reasonably may satisfy a jury that the accomplice is telling the truth; . . ." Here the corroboration really establishes nothing more than defendant's physical presence with the narcotic, in the company of another person who was a narcotic violator. This does not tend to establish that the accomplice was telling the truth. Without proper corroboration, Mrs. Gray's testimony is insufficient to convict.

The judgment is reversed.

*Jefferson, J.,* and *Kingsley, J., concurred.*