[Civ. No. 26801. Fourth Dist., Div. One. Dec. 15, 1982.]

In re ANTHONY H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY H., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Jeffrey J. Stuetz, Deputy State Public Defender, and Marilee Marshall for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Steven V. Adler and Jay M. Bloom, Deputy Attorneys General, for Plaintiff and Respondent.

---

OPINION

**COLOGNE, Acting P. J.**—An amended petition in juvenile court charged Anthony H. with robbery (Pen. Code, § 211),[1] with obstructing a peace officer (§ 148), and grand theft person (§ 487, subd. 2).

The parties stipulated to the appointment of the juvenile court referee as a temporary judge, and the jurisdictional hearing began February 22, 1982. After the People presented its case, Anthony moved to dismiss the robbery. The court announced the motion was granted, apparently because it believed no threat of force or fear was used. A few minutes later, however, the court realized its ruling may have been both improper and unlawful since it had not heard from the district attorney. The court then stated it would like counsel to research the issue and it was reserving its ruling on this motion until that was done. On stipulation of counsel, the trial was continued until February 25, 1982.

After reviewing the law, on February 25, the court denied the motion for dismissal of the robbery charge. Anthony objected claiming the robbery charge had been dismissed and he could not be tried again because he had already been placed in jeopardy. His objection was overruled and Anthony then presented his defense. The court found the allegations of robbery and obstructing a peace officer to be true. On March 5, the February 22 order of dismissal and the February 25 order reinstating the robbery charge were entered by the clerk. Anthony appeals.

On January 25, 1982, at about 8:30 at night, Anthony was driving a car in a residential area of San Diego. John M. and Brian M. were passengers. John suggested they steal a purse so they could buy some food. They saw an elderly woman, Mrs. Helen M. Seymour, riding a bicycle home from grocery shopping, and John and Anthony agreed John should "rip her off."

---

[1]All statutory references are to the Penal Code unless otherwise specified.

Anthony drove the car next to Mrs. Seymour, and John asked her what time it was. As John began to open the door, she rode her bicycle to the other side of the dark street. Anthony drove the car ahead, pulled over to the curb and turned off the headlights. Mrs. Seymour waited a few moments and then started ahead. Anthony pulled the car to the wrong side of the street and cut her off. She then "darted" over to the corner of the street near a street light. John left the car and said to her, "I don't want to harm you, but I want your purse." She denied having one, but John reached into her grocery bag which was in the rear bicycle rack and took out her purse. As he ran toward the waiting car, Mrs. Seymour flagged down a passing vehicle driven by Mr. Anthony White and asked for his help in her pursuit of the robbers. During the ensuing car chase, White attracted the attention of San Diego Police Officer Sergojan who also joined the pursuit. Anthony pulled the car over to the curb and he and Brian ran away. John slid into the driver's seat and drove off but was soon stopped by the officer. Mrs. Seymour's purse was found inside the car. John identified Anthony and Brian as the other youths involved in the purse snatch, and they were arrested later that night.

When Anthony was arrested for robbery, he said, "All we did was rip off an old lady's purse. I don't think that's robbery." At the police station, Anthony said, "I know what this is for. It's for ripping off the purse from the old lady. So what? I did it with my friends. I guess we'll be in it together all the way."

■ Anthony first contends the court's reinstatement of the robbery allegation after dismissal for insufficient evidence was barred by the provisions in the United States and California Constitutions prohibiting double jeopardy.

When Anthony's counsel made a motion to dismiss the robbery count, the court suggested the thrust of the motion was the absence of force or fear. Anthony's counsel then stated, "There is no force," to which the court replied, "Right, I agree. That is dismissed." The court then considered a similar motion on the grand theft person count for both Anthony and codefendant Brian. After briefly hearing argument for the juveniles, the court asked the prosecutor to respond. The prosecutor argued the facts indicate a robbery more clearly than a grand theft person. After discussing the concepts of force or fear and person or presence, the court stated: "Well, I sustain[ed] the motion of Counsel [dismissing the robbery] because it is my impression of the law, but I can undo any effort I made certainly and, if I am in error of that, I will undo that. We have some interesting legal arguments, and maybe what we are going to need is to hear some law at this point. So, as to both of those questions—" After more discussion on the issue of force or fear, the court said: ". . . . Well, maybe we have some legal arguments that should be looked into before we proceed further with the taking of evidence. I am not trying to put everybody off, but these are reasonable issues that I had in my own mind. I am not sure that I can agree with

the District Attorney, but I will give him the chance to prove me wrong because I did not give him the chance when I quickly ruled against him, and I will also give you the chance, if you wish to do it, to research the law a little further with respect to this element of whether or not this is a grand theft or a petty theft or, for that matter, even a 211 [robbery]. But, we are not going to get all that done this afternoon and, particularly, with the meager library we have here. So, I will leave it to you how you want to proceed. If you want to have me continue the case, which I don't particularly want to do, but if you want me to I will do that, give you a chance to prepare arguments. . . ."

The parties agreed to continue the matter until February 25, 1982. The prosecutor specifically asked, "Would the Court then reserve its ruling on the motion for the 211?" The court replied, *"Yes, I am setting aside my response to [Anthony's counsel]."* (Italics added.) The February 22, 1982, minute order inaccurately and incompletely reflected the court's rulings. This order stated: "Now, THEREFORE, IT IS ORDERED THAT further hearing on this matter be and the same is hereby continued to February 25, 1982 at 3:00 p.m. in Department V for trial; further, that Count I is hereby dismissed in the furtherance of justice, and for insufficient evidence, at the request of the attorney;

"IT IS FURTHER ORDERED that all prior orders not in conflict herewith shall remain in full force and effect."

At the continued hearing on February 25, the court stated: "All right, thank you. Well, this case is continued from the other day when we had the testimony of witnesses and put it over to today because we got into a discussion as to whether or not there was sufficient grounds upon which to proceed as a matter of law as it relates to the offense of robbery and as it relates to the offense of grand theft. *I ruled, and inappropriately so, by sustaining the motion of Mr. Reilly [Anthony's counsel] and dismissing the robbery, and I realize I made an error, backed up, set that aside, and we are here today to hear further with respect to the questions of law.* Mr. Reilly has filed a brief which I received and read, and if I recall, you [the prosecutor] had rested?" (Italics added.)

After further discussions and the dismissal of the grand theft person count, the following discussion occurred: "MR. REILLY: And then I would like to, at least, preserve on the record without commenting on the merits of such an argument—my client has asked me to preserve it for the record—when the Court initially made a statement which I interpreted as dismissing the robbery count.

THE COURT: Yes, I did that. However, maybe I should point it out. You happened to catch me at the time when I was thinking about precisely the thing you mentioned, and I did so without even giving the District Attorney an opportunity to so much murmur, and that is not only inappropriate, it is unlawful, and that is what caused me to set it aside. But, at any rate, go ahead.

"MR. REILLY: That may well be so, but assuming that someone else besides myself will be looking at this record, I would at least like to preserve on the record any claim of former jeopardy or double jeopardy with regards to that dismissal.

" . . . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: That is esoteric thinking. If the Appellate Court finds that, we all are out to lunch. At any rate, you have it on the record, and I understand the reason for putting it there."

After hearing the defense evidence, the court found the robbery allegation to be true. The February 25, 1982, minute order states the court set aside the previous dismissal of the robbery, reinstated this count and found the allegations to be true. This order of February 25 and the prior order of February 22 were simultaneously filed and thus entered by the clerk on March 5, 1982.

■ When a juvenile court renders and enters an effective order granting a motion to dismiss pursuant to Welfare and Institutions Code section 701.1, the prosecution may not institute a later proceeding which charges the same offense. (Cf., §§ 1118 and 1118.2; also see *Veitch* v. *Superior Court* (1979) 89 Cal.App.3d 722, 727-728 [152 Cal.Rptr. 822], dealing with dismissal of prosecution under section 1118, a similar proceeding in an adult prosecution.) The grant of a Welfare and Institutions Code section 701.1 motion recognizes the prosecution has failed to make a prima facie case and is equivalent to a finding on the merits that the allegations charged are untrue. A dismissal of an allegation in a juvenile court hearing on the basis of insufficient evidence should have the same effect as an acquittal for the purpose of double jeopardy analysis (see *In re James M.* (1973) 9 Cal.3d 517, 520 [108 Cal.Rptr. 89, 510 P.2d 33]; *Richard M.* v. *Superior Court* (1971) 4 Cal.3d 370, 375-378 [93 Cal.Rptr. 752, 482 P.2d 664]).

■ The crucial question in the present case is whether the robbery allegation was dismissed in an effective court order.[2]

A written order of dismissal must "be entered in the clerk's register and is effective for all purposes when so entered" (Code Civ. Proc., § 581d). As section 664 of the Code of Civil Procedure states: "If the trial has been had by the court, judgment must be entered by the clerk, in conformity to the decision of the court, immediately upon the filing of such decision. *In no case is a judgment effectual for any purpose until entered.*" (Italics added.) Witkin states:

[2]Because the parties stipulated the referee would sit as a temporary juvenile court judge, the referee's orders would become "final in the same manner as orders made by a judge" (Welf. & Inst. Code, § 250; see *In re Perrone C.* (1979) 26 Cal.3d 49, 57 [160 Cal.Rptr. 704, 603 P.2d 1300]).

"The purpose of the rule is clear: It would be manifestly undesirable to allow judgments to be used or enforced without any official evidence of their terms. The rule goes further, however; until entry, the judge can vacate or change his previously rendered judgment as he sees fit. [Citations.]" (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 50, p. 3215.)

In the present case, the two relevant minute orders are the February 22 order which purports to dismiss the robbery charge and the February 25 order which sets aside the dismissal, reinstates the robbery count and then finds the robbery allegation to be true. As both of these orders were entered at precisely the same time on March 5, 1982, they became effective also at the same time. To reconcile these apparently incompatible orders, we must examine the record of the proceedings to determine what the court intended as its one effective order (see *People* v. *Odom* (1970) 3 Cal.App.3d 559, 565-566 [83 Cal.Rptr. 520]).[3]

On February 22, a few minutes after the court dismissed the robbery, it realized its ruling may have been both substantively incorrect and an unlawful violation of the People's due process right to be heard. The court indicated it would correct its ruling if, after researching the law, it found the ruling to be erroneous. The court invited the parties to submit authorities on the issue of force or fear, and in fact, Anthony's counsel later submitted a brief on the point. The court clearly stated it was reserving its final decision on the motion to dismiss the robbery. The February 22 order must be construed to be only a tentative and interim ruling. This ruling was effectively vacated in open court on February 22 by the court's own action when it said it was setting aside its response to Anthony's motion. It made this position clear at the continued hearing on February 25, before the alleged order of dismissal would have become effective, i.e., on March 5 when it was entered by the clerk. We believe the February 25 order, which was signed by both the temporary judge and the presiding judge of the juvenile court, to be the effective order. Thus, there was no effective order dismissing the robbery count, and Anthony was placed in jeopardy only once.

The "central purpose 'of the prohibition against successive trials' is to bar 'the prosecution [from] another opportunity to supply evidence which it failed to muster in the first proceeding.' (*Burks* v. *United States,* 437 U.S. 1, 11 (1978)." (*Swisher* v. *Brady* (1978) 438 U.S. 204, 215-216 [57 L.Ed.2d 705, 715 98 S.Ct. 2699].) In addition, the double jeopardy proscription is intended to (1) avoid the risk that an innocent person will be convicted by subjecting him

---

[3]In *Odom,* the trial court erroneously dismissed a criminal charge following a Penal Code section 1118.1 motion. The appellate court considered the clear intent of the trial judge and stated: "We therefore spurn a slavish adherence to formality and resort to common sense for the solution. While procedural exactness is to be admired, it is no longer considered an indispensable ingredient to effective judicial administration, and a court may look through form to substance if necessary to attain justice." (3 Cal.App.3d at p. 565).

to a series of proceedings where the factfinder in each of these successive proceedings has the authority to make a binding determination of guilt; and (2) prevent the state from subjecting the accused "to the embarrassment, expense, and ordeal of a second trial" (*id.* at p. 216 [57 L.Ed.2d at p. 716]). There was no violation of these protections here.

Anthony was subjected to only one proceeding. The state had presented its case and was not given an opportunity to reopen its case or otherwise supply missing evidence necessary to make a prima facie case. This jurisdictional hearing was before only one judge sitting as factfinder, and Anthony was not subjected to the embarrassment, expense, or ordeal of a second trial. Anthony's constitutional right not to be placed in double jeopardy was not infringed.

■ Anthony next contends insufficient evidence supports the true finding of the robbery allegation.

We reject this contention as substantial evidence indicates Mrs. Seymour was stalked by the three young men in an automobile at night on a dark street after they agreed to snatch her purse. Anthony positioned the car to assist in the venture. John got out of the car and said to her, "I don't want to harm you, but I want your purse." Although John spoke in a polite voice, the obvious implication is that John would harm her if he did not get the purse. The judge found, and we agree, this statement was an implied threat to use force if Mrs. Seymour did not comply with the unlawful demand. Mrs. Seymour's actions of crossing the street, waiting for a few moments, considering whether to seek assistance from residents on the street, and darting to a well lit part of the street as John approached, as well as her testimony she feared for her safety because she did not know what was going to happen, provide substantial evidence supporting the court's true finding she was put in fear. John's taking of the purse from her immediate presence provides the other element of the crime of robbery.

Judgment affirmed.

Wiener, J., and Moon, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1983.

---

*Assigned by the Chairperson of the Judicial Council.