[Crim. No. 42162. Second Dist., Div. One. July 20, 1983.]

In re STEPHEN P., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
STEPHEN P., Defendant and Appellant.

124

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Janice Feinstein, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and Shunji Asari, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, Acting P. J.**—A supplemental petition filed June 11, 1981, alleged that Stephen P. (Steve), age 14, was then a ward of the court and that previous orders of the court had not been effective in his rehabilitation by reason of three charges of arson committed on February 12, 1981. Following an adjudication hearing, count I (arson of a structure) having been dismissed on motion of petitioner, the court sustained count II (wilfully and maliciously setting fire to property of another), a felony; count III was not sustained. The minor appeals from order sustaining supplemental petition and dispositional order.

On February 12, 1981, a school holiday, a fire was set in Vicky's locker at Fremont Junior High School damaging the locker and its contents and several adjoining lockers. On school grounds at the time were Crystal, Rita, Greg and his brother Tommy, Michael, Brandon and Steve, all seventh grade students. Fireman Fred Corsi investigated the fire; he recovered matches from Vicky's locker; in his opinion the fire was set.

Crystal who had matches and Rita who carried firecrackers, went to the school that day with the intention of putting a firecracker in Vicky's locker; at the fence they met Greg and Tommy who talked about their plan. Soon Michael, Brandon and Steve arrived. Crystal gave them the matches and, except for Crystal who could not get over the fence, they all climbed the fence and entered the building in which the lockers were located; Crystal yelled out to them the number and combination of Vicky's locker. Rita, Greg and Tommy went to Vicky's locker; Greg opened the locker and Rita handed him a firecracker accidently detaching the fuse; Greg stuck it in the little hole next to the combination tumblers to "jam the locker" and tried to reattach the fuse but failed, then they ran back to the fence. Meanwhile, Michael, Brandon and Steve went to Michael's locker where Steve removed some of his things then returned to the fence. After learning Greg had failed to light the firecracker in Vicky's locker, Steve, Michael and Brandon jumped over the fence, entered the building, went to Vicky's locker which Steve opened with the combination supplied by Crystal, looked in, took the matches given to him by Crystal and lit papers in the locker setting fire to them; Michael said "You're crazy, you shouldn't do that," and ran off; Brandon did not immediately run but told Steve, "You are dumb," then turned and ran; as Brandon left, Steve said "It's not lit good yet." Michael, Brandon, then Steve ran back to the fence; Michael who ran ahead was very excited and yelled to the others "We did it. We did it." Shortly thereafter they saw smoke rising from the area of Vicky's locker.

I
SUFFICIENCY OF EVIDENCE

██ Relying on *In re Miguel L.* (1982) 32 Cal.3d 100 [185 Cal.Rptr. 120, 649 P.2d 703] and *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], appellant contends that "Because the only evidence that [he] lit the fire is the repudiated out-of-court statements of Michael and Brandon, the evidence is insufficient to sustain the supplemental petition." However, we note that a motion to dismiss (Welf. & Inst. Code, § 701.1) was made on this ground at the close of the People's case, and denied. The issue of the propriety of the denial, although not raised by appellant, is inherent in this appeal, thus at this point we consider only that evidence received on the People's case.

Following the fire, School Administrator Timothy Dunn interviewed Michael who denied knowing anything about the fire. Later while Dunn was interviewing another student, Michael asked to speak to him, began to cry and said he and Brandon were with Steve when Steve lit the fire in Vicky's locker; Dunn had never seen Michael cry, and Michael told him he was worried about what would happen to him because he was less than candid

and that he saw Steve open the locker, take some papers from it and light the fire with matches. Brandon told Dunn he saw Steve light the fire but he walked away because he did not want to be part of it. Later Michael and Brandon separately talked with Arson Investigator Hugh Logue and several officers; each boy told them he saw Steve set the fire in Vicky's locker. (Tapes of these two interviews were received in evidence.) Just before each testified at the adjudication hearing, Michael and Brandon were granted immunity but when they testified each denied seeing Steve light the fire— Michael testified he lied to Dunn and Logue because he thought he would be taken to juvenile hall, Brandon testified he lied because he was frightened.

Denial of the motion to dismiss came after lengthy argument based upon *In re Eugene M.* (1976) 55 Cal.App.3d 650 [127 Cal.Rptr. 851] and *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196]. In the juvenile court's rejection of these two cases as distinguishable from the instant case, is the implied finding that there was sufficient evidence tending to connect Steve to the commission of the arson to permit the use of the repudiated statements. Thus, considering all of the evidence offered on the People's case in a light most favorable to respondent, we conclude, as did the juvenile court,[1] that the People made a prima facie case.

■ The basic rule as to the sufficiency of extrajudicial statements to support a conviction is articulated in *People v. Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865]: "An extrajudicial identification that cannot be confirmed by an identification at the trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime." (P. 631; *In re Miguel L.* (1982) 32 Cal.3d 100, 105 [185 Cal.Rptr. 120, 649 P.2d 703].) The court reversed the conviction in *In re Miguel L.,* because no evidence other than Arnaldo's prior unsworn statements, repudiated by him at trial, implicated Miguel in the burglary. In *People v. Gould,* the only evidence linking Marudas to the burglary was the victim's identification of him from police photos. At trial she could not identify Marudas when she saw him in person. The court held that because the circumstances under which identification was made rendered it unreliable, it was insufficient standing alone to sustain the burglary conviction.

■ Nothing in *In re Miguel L.,* or *Gould* explains the phrase "other evidence tending to connect the defendant with the crime." However, sim-

---

[1]Said the judge: "The Court is strongly persuaded this whole case makes a cohesive fabric. To the Court it's strongly persuasive and strongly distinguishable from Eugene M., . . . I found the evidence very convincing . . . I find the case clearly distinguishable from Eugene M. and also from Johnny G. . . . . ."

ilar language appears in section 1111, Penal Code[2] relating to corroboration of testimony of an accomplice; and it is defined in *People* v. *Perry* (1972) 7 Cal.3d 756 [103 Cal.Rptr. 161, 499 P.2d 129]: "'Although the corroborating evidence must do more than raise a conjecture or suspicion of guilt, it is sufficient if it tends in some degree to implicate the defendant.' (*People* v. *Santo* (1954) 43 Cal.2d 319, 327 [273 P.2d 249].) '[T]he corroborative evidence may be slight and entitled to little consideration when standing alone.' (*People* v. *Wade* (1959) 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116].)" (P. 769; *People* v. *Hathcock* (1973) 8 Cal.3d 599, 617 [105 Cal.Rptr. 540, 504 P.2d 476].)

 Keeping in mind the foregoing authorities, we conclude that apart from any repudiated out-of-court statement, the evidence on the People's case viewed in a light most favorable to respondent (*People* v. *Chavez* (1980) 26 Cal.3d 334, 362 [161 Cal.Rptr. 762, 605 P.2d 401]) tends to connect Steve with the arson. Rita asked Greg to "jam the locker" and he, Rita and Tommy jumped the fence and went to Vicky's locker; Michael, Brandon and Steve jumped over and went to Michael's locker; Greg opened Vicky's locker and tried but failed to light a firecracker in the hole near the combination tumblers; Rita and Tommy, then Greg returned to the fence; Greg was the last to leave the locker area and at no time were any matches lit; at the fence Greg told the rest including Michael, Brandon and Steve what he had been doing and that he had failed; they all lit firecrackers then Michael, Brandon and Steve jumped over the fence and entered the area of Vicky's locker. Michael testified Brandon and Steve went down the corridor toward Vicky's locker but he remained at the corner, paid no attention to what happened at the locker and "took off"; Brandon testified that after the others talked to them at the fence, he, Michael and Steve jumped over, went to Michael's locker, then "they" walked toward Vicky's locker and "passed by it," Michael ran then he and Steve went over the fence. In interviews with Nichols, Dunn and Logue, Steve admitted going to school with Brandon and Michael to meet Rita, hearing Rita and Greg say they were going to light the locker on fire, and going to his and Michael's locker with Brandon. While Steve's presence at the scene and the opportunity to commit the crime alone may not be sufficient evidence tending to connect him with the arson (see *People* v. *Hathcock* (1973) 8 Cal.3d 599, 618 [105 Cal.Rptr. 540, 504 P.2d 476]), there are a number of circumstances which implicate Steve with the fire set in Vicky's locker. A couple of minutes after Steve, Michael and Brandon jumped the fence and entered the locker area, Michael and Brandon ran from the school to the fence, and the minor ran behind

---

[2]In pertinent part section 1111 provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such *other evidence as shall tend to connect the defendant with the commission of the offense*; . . ." (Italics added.)

them—according to Crystal "they came running back they were running towards the fence and they came back over to where we were," speaking excitedly, and according to Greg, "Michael came jogging then the others came jogging," Michael said something and was "excited." Shortly thereafter smoke coming from the area of Vicky's locker was observed by Crystal and Greg.

While the evidence tending to connect the minor to the commission of the arson is circumstantial, it establishes that on a school holiday when no other students were around, after Greg told Steve, Michael and Brandon of his failure to light a fire in Vicky's locker, Steve, Michael and Brandon jumped over the fence, entered the building, a few minutes later came running to the fence with Michael in front, "excited" and saying something, followed by Brandon, then Steve, and shortly thereafter smoke was seen coming from the location of Vicky's locker. It strongly indicates that Steve, at the very least, was an aider and abettor in the arson and, as such, liable as a principal (*People* v. *Chavez* (1980) 26 Cal.3d 334, 362 [161 Cal.Rptr. 762, 605 P.2d 401]). It also permitted the trial court to consider the out-of-court statements of Michael and Brandon to determine whether the People made a prima facie case. The court distinguished *In re Eugene M.* (1976) 55 Cal.App.3d 650 [127 Cal.Rptr. 851] and *In re Johnny G.* (1979) 25 Cal.3d 543 [159 Cal.Rptr. 180, 601 P.2d 196] from the instant case in denying the motion. In *In re Eugene M.*, the court emphasized that the circumstances surrounding the out-of-court statements suggest an inherent untrustworthiness noting they were prompted by threats of incarceration and prosecution and were "confused and intermingled with the narrative of another crime." (P. 658 of 55 Cal.App.3d); and in *In re Johnny G., supra,* 25 Cal.3d 543, after the attack and at the scene the victim identified to police the minor as his assailant, but on the stand he said he did not know who attacked him, and because he lost consciousness, he did not remember previously identifying the minor.

The reliability of the out-of-court statements is substantiated in great part by the testimony of Crystal, Greg and the school authorities. The record affords a strong basis for concluding that the probative value of their prior statements was greater than the probative value of the repudiation of Michael and Brandon in court. (*People* v. *Chavez, supra,* 26 Cal.3d 334, 363.) Appellant argues that the veracity of the extrajudicial statements is questionable because "aside from their being accomplices, there was inherent coerciveness in the prolonged questioning conducted by the school officials." First, one cannot read that portion of the testimony of Michael and Brandon repudiating their out-of-court statements and not conclude, as did the juvenile judge,[3] that it was highly suspect. Second, a playing of the

[3]Said the court: "Look at their appearance on the stand. To a man they were evasive, hesitant, very loath to admit or give testimony in any manner."

tapes containing the out-of-court statements of Michael and Brandon (received in evidence) dispels any doubt that the boys then told the truth and that the statements were freely and voluntarily made. The presence of their mothers, the circumstances of their admissions, their manner of speaking, the conduct of the officers and the length and manner of questioning lend no credence to any claim that their statements were the result of threat, promises or coercion. Third, the claim of "inherent coerciveness" in the "prolonged questioning conducted by the school officials" finds no support in the testimony of the school authorities. There was nothing presented to the court to cast doubt on the veracity of the two out-of-court statements, and nothing is presented to us. Finally, section 1111, Penal Code (corroboration of accomplices) has no application to juvenile court proceedings. (*In re Mitchell P.* (1978) 22 Cal.3d 946, 949 [151 Cal.Rptr. 330, 587 P.2d 1144].)

The juvenile court having accepted the credibility of the out-of-court statements as credible, found, and properly so, that the prosecution made a prima facie case of arson against the minor. (*In re Anthony H.* (1982) 138 Cal.App.3d 159, 164 [187 Cal.Rptr. 820].)

Viewing the testimony of the defense witnesses in the same light as that of the People's witnesses, there is even more evidence to connect the minor with the arson. Rita testified that after Greg failed "to jam" Vicky's locker, Michael, Brandon and Steve jumped over the fence, went into the hall and later "came back fast," "[t]hey didn't take a long time over there" and Michael "kind of" yelled "something." Greg's defense testimony was much the same; at the fence he told Michael, Brandon and Steve he had failed to light the firecracker in Vicky's locker, and shortly thereafter Michael, Brandon and Steve jumped over the fence, went into the school and about two minutes later came back; Michael "was running back . . . jogging," Brandon and Steve were "still over there" then came Brandon and Steve; Michael was "excited" and said "They did it or he did it." Steve denied setting the fire but admitted that the others told them they had been messing around with Vicky's locker with firecrackers, came to school to blow it up, tried "to jam" the locker and set it on fire but failed. The entire evidence viewed in a light most favorable to respondent was clearly sufficient to permit a reasonable trier of fact to conclude beyond a reasonable doubt that Steve set the fire in Vicky's locker. (*People* v. *Chavez* (1980) 26 Cal.3d 334, 362 [161 Cal.Rptr. 762, 605 P.2d 401].)

II

GRANT OF IMMUNITY

Appellant's contention that he was denied due process of law because he was singled out for prosecution while the others were granted immunity

is without merit. He says others had a motive for damaging Vicky's locker, but he did not, and even if the out-of-court statements of Michael and Brandon are true, lighting the fire was no more than "a spur of the moment impulse" upon hearing that the others had failed. Of course, a fire set on "a spur of the moment impulse" is no less wilful and malicious under statutory definition than one set with motive, and burns as well and does as much damage; and the evidence supports a finding the fire was maliciously set as defined in Penal Code section 450, subdivision (e). More significant is the fact that appellant does not claim anyone else committed felony arson. The evidence fails to point to coconspirators or accomplices, but to only one person, Steve, who the only witnesses to the arson, Michael and Brandon, agreed set the fire. There is no evidence that either boy participated in the crime with Steve, thus there was no reason the others could not be granted immunity to secure evidence relating to his perpetration of the crime. Finally, the question of immunity for the witnesses did not arise until they were actually called to testify; the comments of the prosecutor at the time demonstrate that the need to grant immunity played no part in any decision to decline to file petitions against the others, such decision having been made long before trial. There is no evidence of unfair and unequal law enforcement which would justify a finding of improper use of the immunity statutes; and there is manifest no abuse of the exercise of the considerable discretion given to the prosecutor in this area. (*People* v. *Beyea* (1974) 38 Cal.App.3d 176, 203-204 [113 Cal.Rptr. 254]; *People* v. *Boehm* (1969) 270 Cal.App.2d 13, 20 [75 Cal.Rptr. 590].)

### III
### No Double Jeopardy

On October 13 at the conclusion of the adjudication hearing the judge found "the fire was set intentionally and maliciously" then ruled that the allegations of count III (recklessly set fire), a misdemeanor, "have been sustained, and the allegations of count II (willfully and maliciously set fire), a felony, have not." Immediately the prosecutor called the judge's attention to the code definitions, the clear evidence of malice, the difference between intentionally and recklessly setting a fire and the fact that count III is not a lesser included offense but an alternative pleading. After reading the pertinent code sections and stating its "determination that the acts involved were done intentionally and pursuant to the definition set forth in Section 450 which the Court had not previously considered maliciously and that recklessly is not the appropriate characterization and that was an error by the Court," the court said: "I will have to take it under submission and state my intent at this time and determine whether that [correct the error] can be done." The judge expressed his intent to reverse his ruling and sustain count II, submitting only the issue whether he had the power to do so to November

4. The minute order of October 13, obviously prepared after the hearing, recites the court's announcement that "on reconsideration [it] determined that sustaining of Count 3 was in error and Count 2 should have properly been sustained and now takes under SUBMISSION the issue of modification/correction of the judgment pronounced."

On November 4, after hearing argument on the issue of once in jeopardy and the court's power to correct its own error, the court recited it had previously found facts to support intent and malice but had made a mistake of law, was under the impression counts II and III were only one offense, after reviewing the statutes believed count II to be more appropriate and stated it intended to change the finding as to count II "consistent with its factual findings" and submitted only the legal issue of jurisdiction; found that under the circumstances it had the power to correct its judicial mistake promptly and did so; and amended the order to reflect a sustaining of the allegations of count II.

■ We reject the contention that appellant's right against double jeopardy was violated, and hold that the court had the power to find that the allegations of count II were sustained and that such finding was not barred by the double jeopardy clause of the state and federal Constitutions (*In re Anthony H.* (1982) 138 Cal.App.3d 159, 165 [187 Cal.Rptr. 820]). In *Anthony H.*, minutes after the judge announced he was granting a motion to dismiss a robbery count, he expressed doubt as to the propriety of the ruling, vacated it and reserved his ruling until a later day; thereafter he reinstated the robbery count and found the same to be true. The court held the initial minute order never became effective and there was no violation of double jeopardy. (Pp. 165-166.)

It was only minutes after the court here made its initial finding, and long before the minute order was entered that it announced it had made an error it intended to correct; and its determination to change its ruling was made before entry of the finding in the minutes, the only issue reserved for a later day being the power of the court to correct its error. Moreover, the minor had not been placed in any restraint of his "sentence," indeed, at that time no disposition had been indicated. (See *In re Eugene R.* (1980) 107 Cal.App.3d 605, 612 [166 Cal.Rptr. 219].) Finally, inasmuch as the minor was subjected to only one proceeding, all of the evidence had been presented and the hearing had been concluded, the People did not nor did they ask to reopen their case or otherwise supply additional evidence, the hearing was before only one judge sitting as fact finder, and the minor was not subjected to the embarrassment, expense or ordeal of a second trial, we can only conclude that his constitutional right not to be placed in double jeopardy

was not infringed. *(In re Anthony H., supra,* 138 Cal.App.3d 159, 165-166.)

## IV
### DISPOSITION

■ There is no merit to appellant's contentions that (1) all of the evidence went to whether he was responsible for the fire and none to how he was doing on probation under the previous juvenile court orders; and (2) it was error to compute his maximum possible time in custody by including the penalty for arson becasue'arson was not alleged by way of a section 602 petition. However, for the court's failure to make an express finding that the previous order has been rehabilitatively ineffective, we remand the cause for further proceedings. *(In re Michael B.* (1980) 28 Cal.3d 548, 553, fn. 2 [169 Cal.Rptr. 723, 620 P.2d 173].)

A supplemental petition was filed June 11, 1981. Among other things, it alleged that the minor is a ward of the court and the previous orders of the court have not been effective in the rehabilitation of the minor by reason of three described violations of the arson statutes (Pen. Code, §§ 451, 452), previously sustained petitions on the minor are "8/18/80 240 PC" and "8/18/80 647(a) PC" and the maximum confinement time on the previously sustained petitions is eight months; and requested a change in the dispositional orders of the above dates and aggregation of confinement time at the disposition of the matter. Although labeled "supplemental petition," the petition was a proper one under sections 602 *and* 777, Welfare and Institutions Code in that all allegations necessary for each petition were included therein. (Welf. & Inst. Code, §§ 656, 777, subds. (a) and (b).) It gave full notice to the minor and his counsel that the hearings in the juvenile court resulting from the filing of the petition would encompass the adjudication and disposition of the alleged violations of the Penal Code as well as the issue of the minor's continuation as a ward of the court and the possible increase of his maximum period of confinement. "[T]he issues may be presented in a single unitary petition which contains the requisite allegations, and may be disposed of in the course of a single proceeding otherwise conforming to law. (See *In re Reynaldo R., supra,* 86 Cal.App.3d 250, 254-255 [150 Cal.Rptr. 71], involving use of a single petition filed under §§ 602 and 777; see also, *In re John G., supra,* 72 Cal.App.3d 242, 245 [139 Cal.Rptr. 849]; *In re Aaron N., supra,* 70 Cal.App.3d 931, 941 [139 Cal.Rptr. 258].) [¶] The filing of a unitary petition satisfies the essential demands of due process. (See *In re Arthur N., supra,* 16 Cal.3d 226, 233 [127 Cal.Rptr. 641, 545 P.2d 1345].)" *(In re Michael B.* (1980) 28 Cal.3d 548, 554 [169 Cal.Rptr. 723, 620 P.2d 173].) That all parties were aware that this was such a petition and fully apprised of the allegations of the

petition and possible disposition is reflected in the nature of the proceedings, the evidence adduced on the adjudication hearing, the probation officer's report, the dispositional hearing, the arguments of counsel and the comments of both parties and the court (see *In re Reynaldo R.* (1978) 86 Cal.App.3d 250, 255 [150 Cal.Rptr. 71]). It is clear that this petition was treated by both parties and the court throughout the juvenile proceedings as a 602/777 petition. At the dispositional hearing the court asked "the maximum period of imprisonment in this matter," and the prosecutor answered "Three years, four months." No comment was made by minor's counsel. The court then accepted the recommendation of the probation officer and "ordered that Stephen be continued a ward of the Ventura County Juvenile Court pursuant to section 602 of the Welfare and Institutions Code" and that he be returned to the home of his mother on probation. The court computed "the total maximum term to be 3 years four months." The only inquiry by minor's counsel concerned the requirement of probation that the minor's mother attend at least eight sessions of family counseling. No objection was voiced to, indeed there was no discussion of the maximum term, in fact, the court said to the minor "Stephen, as you heard when I asked Ms. Clontz for the maximum period of time you could receive in this, it is very substantial." Minor's counsel surely knew the maximum period of confinement included the penalty for arson. No surprise concerning the consequences flowing from the petition was expressed and no objection was made. All parties fully understood the computation of the maximum period of three years and four months and knew that it included the arson penalty— the upper term of three years (§ 451, subd. (d), Pen. Code)—and one-third of the middle term or two months each for simple assault (§§ 240, 241, Pen. Code) and child molestation (§ 647a, Pen. Code).[4] In light of the foregoing, we cannot find the absence of express reference in the petition to section 602 in any manner prejudiced the minor.

However, the flaw in the juvenile process was the failure of the court to find that the previous order has been rehabilitatively ineffective. "Before the previous dispositional order may be modified, the court must make an express finding the previous order in fact has been rehabilitatively ineffective. (*In re Reynaldo, supra,* 86 Cal.App.3d at p. 255; *In re Denise C.* (1975) 45 Cal.App.3d 761, 766-767 [119 Cal.Rptr. 735].)" (*In re Michael B.* (1980) 28 Cal.3d 548, 552-553 [169 Cal.Rptr. 723, 620 P.2d 173].) The court's failure to do so here mandates a limited reversal (28 Cal.3d, at p. 553, fn. 2).

---

[4]On July 15, 1981, a petition under section 602 was filed in San Diego County charging the minor with a violation of section 594, subdivision (b)(2), Penal Code (malicious mischief), sustained on June 24, 1981, and ordered transferred to Ventura County. There appears to have been no disposition of the San Diego petition.

The order sustaining the supplemental petition is reversed solely for the failure of the superior court to make an express finding that the previous dispositional order has been rehabilitatively ineffective, and the cause is remanded with directions to make a determination on said issue. In all other respects the order sustaining the supplemental petition is affirmed. The dispositional order is reversed and the cause remanded with directions to the superior court to reinstate said order in the event it makes a finding that the previous dispositional order has been rehabilitatively ineffective, or to make a new and different order as it deems proper in the event it makes no such finding.

Hanson (P. D.), J., concurred.

**DISCO, J.,**\* Dissenting.—I would reverse on the grounds that there was insufficient evidence presented in the prosecution's case-in-chief to corroborate Michael and Brandon's out-of-court statements, which were later repudiated at trial, identifying appellant as the one who set the fire.

In *People* v. *Gould* (1960) 54 Cal.2d 621 [7 Cal.Rptr. 273, 354 P.2d 865], the California Supreme Court held that an extrajudicial identification that cannot be confirmed at trial is insufficient to sustain a conviction in the absence of other evidence tending to connect the defendant with the crime. In *Gould,* two defendants were convicted of burglarizing an apartment. The victim identified the defendant Marudas, from a photographic lineup, as the man who was standing outside her apartment at the time of the burglary. However, she was unable to confirm this identification at the time of trial. The court found that, although the pretrial identification was admissible under the hearsay exception for prior identification statements, it was the only evidence connecting Marudas to the crime and reversed, holding that the out-of-court identification could not sustain a conviction in the absence of corroborating evidence. (*Id.,* at p. 631.)

More recently, under factual circumstances analogous to those encountered here, the California Supreme Court, in *In re Miguel L.* (1982) 32 Cal.3d 100 [185 Cal.Rptr. 120, 649 P.2d 703], reversed an order sustaining a Welfare and Institutions Code section 602 petition on the grounds that the only evidence against the minor was the testimony of a self-declared accomplice which was repudiated at trial. The accomplice, Arnaldo G., had been arrested for possessing a weapon and was interviewed by a police sergeant at juvenile hall. The sergeant told Arnaldo that he had additional information implicating Arnaldo in several burglaries. Arnaldo then admitted his involvement in a number of these, including a burglary at the Ross home

---

\*Assigned by the Chairperson of the Judicial Council.

in which he identified Miguel and a third person as his accomplices. Subsequently, in a second interview with his attorney present, Arnaldo discussed the Ross burglary in detail and put most of the responsibility for the crime off on Miguel. He then asked whether the police would allow him "to go home on supervision." In exchange for his cooperation with the police and his expected testimony in court, he was granted immunity from prosecution for the Ross burglary and three others to which he had confessed. When Arnaldo was called as a witness at Miguel's jurisdictional hearing, he stated that he didn't want to testify. The court told him he had to answer the questions. He thereafter denied the veracity of the statements he had made during the police investigation and specifically denied that Miguel had participated in the burglary of the Ross home.

The Supreme Court reversed the order sustaining the petition on the basis of *Gould,* noting first that out-of-court statements which cannot be confirmed at trial lack the traditional indicia of reliability possessed by sworn testimony which has been subjected to cross-examination in a formal judicial proceeding. The court stated that such formal procedures are necessary in order to test the veracity, recollection, and possible bias of the witnesses, as well as the effect of official conduct toward the witness. (*Id.,* 32 Cal.3d at p. 107.) The court then stated that there were other circumstances present which also tended to discredit the witness' extrajudicial statements. Arnaldo was an admitted accomplice whose testimony, even in a formal judicial proceeding, would be considered suspect. Generally, the court noted, evidence from an accomplice is regarded as untrustworthy. An accomplice is likely to give testimony in the hope or expectation of lenience or immunity. Further, an accomplice has a strong motive to fabricate testimony which minimizes his participation in the offense and transfers responsibility for the crime to others. (*Id.,* at p. 108.) The court then held that the constitutional requirements of due process prohibited a finding of criminal conduct from being based solely on an accusation which lacked the traditional indicia of trustworthiness and also came from an unreliable source. (*Id.,* at p. 110.)

The present case falls squarely within the rule set forth in *Gould* and amplified in *Miguel.* Michael and Brandon's statements accusing appellant of setting the fire were not made under oath and were not subject to cross-examination in any formal judicial proceeding. They were made during the course of investigation by school authorities into the cause of the fire.[1]

---

[1]Appellant and the other minors were interviewed by the school administrator, Peter Nichols, and by several learning directors, including Timothy Dunn, on the school day following the fire. The minors were interviewed first in a group, and then individually. Appellant admitted being on campus when he was interviewed, and claimed Gregory was responsible for the fire. Michael did not accuse appellant when he was first interviewed. However, at the end of the day he asked to speak to Mr. Dunn. They went into Mr. Dunn's office, and Michael began sobbing. He said that he was more involved than he initially indicated and

Michael and Brandon were suspects along with Rita, Greg, and appellant. All were present at the school that day; all were playing with firecrackers and matches; and all were at or near Vicky's locker shortly before the fire started. All were subject to the school's administrative sanctions, as well as criminal sanctions, for any involvement they might have had in the crime. The concerns underlying *Gould* and *Miguel* thus exist here. Michael and Brandon's statements not only lack the traditional indicia of trustworthiness, they may have been prompted by the same self-serving motives that characterize accomplice testimony.

The defense moved to dismiss the petition under Welfare and Institutions Code section 701.1 at the close of the People's case on the grounds that Michael and Brandon's repudiated out-of-court statements were insufficient to sustain the petition. The trial court denied the motion, but did not make any finding as to the existence or extent of evidence corroborating these statements.

No standard is set out in the *Gould* to *Miguel* line of cases for measuring the quantum of corroborating evidence that is necessary before the case may be submitted to or considered by the trier of fact. Fortunately, however, there is a well-developed body of law interpreting Penal Code section 111 which requires, in language similar to that stated in *Gould* and *Miguel,* that accomplice testimony be "corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense." The formal requirements of Penal Code section 1111 are, of course, not applicable in a juvenile proceeding because an order sustaining a petition is not a conviction within the meaning of the statute. (See *In re Mitchell P.* (1978) 22 Cal.3d 946 [151 Cal.Rptr. 330, 587 P.2d 1144].) However, the policy underlying Penal Code section 1111 is the same as that underlying *Gould* and *Miguel*—namely, to prevent a conviction from being based solely on testimony that is generally understood to be untrustworthy, because it was neither sworn nor subject to cross-examination and/or because it was given by one who has a self-serving motive to implicate another. I see no reason why the case law interpreting the corroboration requirement under Penal Code

---

that he wanted to tell the complete story. He said he saw appellant open the locker, take some papers from it, and set the fire with matches. He later repeated this to the Oxnard Fire Department's arson investigator, Hugh Logue. At trial, Michael said he did not see appellant light the fire and had lied earlier because he thought the police were going to take him to juvenile hall. The next day, Brandon told Mr. Nichols and Mr. Dunn that he saw appellant light the fire. He said he walked away because he did not want to be a part of it. He later repeated this to Captain Logue. At trial, Brandon said he did not see appellant set the fire and had lied before because he was frightened and wanted to get the whole situation over with. He stated that Mr. Nichols was yelling at them, threatened to call the police, and told them they would not graduate unless they worked over the Easter vacation and paid for the lockers.

section 1111 is not equally applicable in juvenile and criminal proceedings when such a requirement is raised by application of the *Gould/Miguel* rule.

While the majority purports to adopt the standard developed under Penal Code section 1111, it does not go on to apply the case authority developed under that section to the facts encountered here. If the case law that has been developed under Penal Code section 1111 were applied to this case, the independent evidence connecting appellant to the crime would not be sufficient to sustain the petition. The majority relies heavily on the fact that appellant ran back to the fence with Brandon and Michael shortly before smoke was seen rising from Vicky's locker. This evidence, however, still only places appellant at the scene along with Michael and Brandon; it does not connect appellant to the crime. Mere presence at the scene of the crime and opportunity to commit the offense is not sufficient corroboration under Penal Code section 1111. (*People* v. *Boyce* (1980) 110 Cal.App.3d 726, 737 [168 Cal.Rptr. 219]; *People* v. *Lloyd* (1967) 253 Cal.App.2d 236, 241 [61 Cal.Rptr. 138]; *People* v. *Thurmond* (1959) 170 Cal.App.2d 121, 124 [338 P.2d 472].)

The added fact that Michael stated "We did it. We did it," when he arrived slightly ahead of Brandon and appellant back at the fence would constitute independent corroborating evidence, in my view; but this evidence cannot be considered in ruling on the propriety of denying the motion to dismiss under Welfare and Institutions Code section 701.1. Rita's testimony that Michael made such a statement was stricken as hearsay by the trial court on motion of the defense. No other evidence of such a statement having been made was introduced in the People's case.

The only other evidence produced in the People's case that could be regarded as corroborating Michael and Brandon's statements is the fact that both Michael and Brandon told the authorities that appellant set the fire. Again, however, the principles relating to the admissibility of accomplice testimony are applicable here. The testimony of one accomplice cannot be used to corroborate the testimony of another accomplice under Penal Code section 1111. (*People* v. *Boyce, supra,* 110 Cal.App.3d 726 at p. 737; *People* v. *Scofield* (1971) 17 Cal.App.3d 1018, 1026 [95 Cal.Rptr. 405].) Michael and Brandon are unreliable sources of information for the same reasons that accomplices are unreliable sources of information, and the testimony of one cannot suffice to corroborate that of the other.

After a brief reference to the circumstantial evidence which it considers independently connects appellant with the crime, the majority moves to a discussion of the reliability of Michael and Brandon's out-of-court statements. The court states that "nothing was presented to the court to cast

doubt on the veracity of the two out-of-court statements, and nothing is presented to us," and concludes that the "probative value of their prior statements was greater than the probative value of [their] repudiation." This, however, miscasts the issue as one of assessing the relative credibility of the out-of-court accusation and the in-court repudiation. The corroboration requirement goes to the admissibility, not the weight, of evidence. It is separate and apart from the requirement that a case be proved beyond a reasonable doubt. The corroboration requirement, for example, mandates an acquittal if accomplice testimony is not corroborated, even if the trier of fact believes the accomplice and is convinced of guilt beyond a reasonable doubt. (See *People* v. *McRae* (1947) 31 Cal.2d 184, 187 [187 P.2d 741], cert. den. 334 U.S. 843 [92 L.Ed. 1767, 68 S.Ct. 1511].)

Applying the standards that have developed and are well accepted in the context of the law requiring corroboration of accomplices, I believe that the motion under Welfare and Institutions Code section 701.1 should have been granted. I would reverse the order sustaining the supplemental petition.

A petition for a rehearing was denied August 17, 1983, and respondent's petition for a hearing by the Supreme Court was denied October 20, 1983.